IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40294

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | Boise, May 2014 Term |
| Plaintiff-Respondent, | ) | |
| | ) | 2014 Opinion No. 93 |
| v. | ) | |
| | ) | Filed: September 4, 2014 |
| MICHAEL EUGENE KOCH, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction for four counts of lewd conduct with a minor, affirmed.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Mark W. Olson argued.

_____

BURDICK, Chief Justice

Michael Eugene Koch appeals from his judgment of conviction, entered following a verdict, for four counts of lewd conduct with a minor under sixteen. On appeal, Koch argues that the Ada County district court made multiple errors in the admission of evidence that warrant reversal of his judgment of conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Koch on four counts of lewd conduct with a minor under sixteen on November 15, 2011, with "C.C." named as the complaining witness in all counts. Count I alleged the crime was committed "by manual to genital and/or oral to genital contact" between January and May 2011. Counts II, III, and IV all alleged genital to genital contact in April 2011.

Koch's daughter, T.K., was a classmate and friend of thirteen-year-old C.C. During her eighth grade year, C.C. spent increasing amounts of time at the Kochs' home as she began to have problems at home.

1

At Koch's trial, C.C. testified that in the spring of 2011 Koch drove her to a street alongside a subdivision where he digitally penetrated her and she performed oral sex on him. C.C. testified that they engaged in sexual intercourse on three occasions at his house when his wife and daughter were out. C.C. testified that she did not disclose her relationship with Koch until the fall of 2011, when she was admitted to Intermountain Hospital following a suicide attempt.

The State played an audio recording of a confrontation call officers had arranged between C.C. and Koch. In the recorded call, C.C. confronted Koch about their sexual relationship. In the course of the call, Koch did not expressly admit sexual contact with C.C., but also did not refute C.C.'s accusations. He expressed his love for C.C. and his fear that he was going to jail.

Following trial, the jury found Koch guilty on all four counts. The district court imposed concurrent unified 25-year sentences, with five years fixed, on each count. Koch timely appealed from his judgment of conviction.

## II. ISSUES ON APPEAL

1. Whether substantial and competent evidence supports the district court's decision that the State provided sufficient expert disclosures.

2. Whether the district court abused its discretion in overruling Koch's objection to comments the prosecutor made during her opening statement.

3. Whether the district court abused its discretion in overruling Koch's foundation objections.

4. Whether the district court erred in overruling Koch's relevance objections.

5. Whether the district court abused its discretion in overruling Koch's objections to certain testimony as nonresponsive.

6. Whether the district court erred in allowing Detective McGilvrey to testify to Salina Koch's prior statement for impeachment purposes.

7. Whether Koch has shown cumulative error.

## III. ANALYSIS

**A. Substantial and competent evidence supports the district court's finding that the State provided sufficient expert disclosures.**

Koch contends that the district court erred in concluding that the State complied with the disclosure requirements of Idaho Criminal Rule 16(b)(7) regarding expert witness Mydell Yeager. Specifically, Koch contends that the disclosures were insufficient under Rule 16(b)(7) because the State failed to disclose Yeager's opinions, and the facts and data behind those

2

opinions. The State responds that the written summary outlining Yeager's opinions and expected testimony it provided met the rule's requirements and that the State was not required to disclose any "facts or data" because Yeager's expert testimony did not rely on any facts or data generated by this case and because her opinions regarding child sex abuse disclosure were not generated from any identifiable data source. On review, this Court will uphold a district court's decision regarding discovery violations if it is supported by substantial and competent evidence in the record. *State v. Stradley*, 127 Idaho 203, 207–08, 899 P.2d 416, 420–421 (1995).

Idaho Criminal Rule 16(b)(7) provides that:

> Upon written request of the defendant the prosecutor shall provide a written summary or report of any testimony that the state intends to introduce pursuant to Rules 702, 703 or 705 of the Idaho Rules of Evidence at trial or hearing. The summary provided must describe the witness's opinions, the facts and data for those opinions, and the witness's qualifications.

In response to Koch's I.C.R. 16(b)(7) discovery request, the State disclosed the following written summary regarding Mydell Yeager:

> Ms. Yeager's curriculum vitae is attached. She'll testify to the dynamics of delayed disclosure as it relates to child sexual abuse. The state intends to elicit expert testimony from Mydell Yeager regarding behavior of children who have been sexually abused and Ms. Yeager will testify that it is rare that a child immediately discloses their sexual abuse especially when they know the perpetrator. Ms. Yeager will testify about the dynamics of child sexual abuse as it relates to grooming a victim, keeping the abuse secret, the effects and threats on whether a child chooses to disclose.

While the State's written summary was read into the record at a pretrial hearing, a copy of the actual disclosure is not in the record. Thus, Yeager's curriculum vitae is not in the record.

At a May 2, 2012 pretrial conference, Koch objected to the State's disclosure as insufficient because it did not include a summary or report written by Yeager. The court overruled this objection, holding that I.C.R. 16(b)(7) did not require the State to have its expert witness produce a written report where none had previously existed and that Koch could object to any of Yeager's testimony that varied from the State's disclosed summary.

Koch objected to the State's disclosure again just prior to Yeager's trial testimony, arguing that it was insufficient because it did not include the facts and data underlying her opinion. The State responded that its disclosure was sufficient, pointing out that Yeager had not written any reports for this case and that she had been available at all times to talk to the defense.

The court overruled Koch's objections, stating that "if there is no data, they don't have to produce data. She is simply an opinion witness."

On appeal, Koch argues that the State's disclosure was not an adequate summary of Yeager's opinions and that the State failed to disclose the facts and data for those opinions. This Court has never addressed the scope of I.C.R. 16(b)(7)'s disclosure requirements. This rule is almost identical to the Federal Rule of Criminal Procedure 16(a)(1)(G).[1] The main difference between these two rules is that the federal rule requires "the bases and reasons for those opinions," whereas the Idaho rule requires "the facts and data for those opinions." Thus, the federal rule arguably requires broader disclosure.

Although the federal rule may be somewhat broader, case law interpreting the federal rule is still instructive. In a possession of a gun in furtherance of trafficking case, the prosecution provided a similar disclosure to the disclosure provided in this case:

> The street value of the crack cocaine and that, based on their training and experience, the quantity of crack cocaine seized in this case is consistent with possession for distribution to others and not for personal use ... [and] the methods of operation of narcotics distributors, including ... the utilization of firearms as part of the drug trade.

*United States v. Lipscomb*, 539 F.3d 32, 37 (1st Cir. 2008). As in this case, the defendant's objection was based on an alleged failure to provide notice regarding the "*bases* for [the witnesses'] ultimate opinion[s]." *Id.* (emphasis in original). The First Circuit Court of Appeals ruled that while the Government's notice that the officers would be testifying on the basis of their "training and experience" was by no means detailed, it was enough to satisfy the requirements. *Id.* at 38. The court went on to note that had "the testimony involved a more complex subject matter, as found in cases involving technical or scientific evidence, more detailed notice may have been required." *Id.*

---

[1] Federal Rule of Criminal Procedure 16(a)(1)(G) reads:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Here, the State's disclosures were sufficient. The State provided Koch with a summary of Yeager's opinions, which did not involve a particularly technical or scientific subject matter, and informed him of the main opinion she was going to testify to: "it is rare that a child immediately discloses their sexual abuse especially when they know the perpetrator." While the State did not specifically disclose that Yeager's opinions were based on her training and experience, which would be the better practice, it did provide Yeager's curriculum vitae. However, her curriculum vitae is not in the record on appeal, so this Court cannot review how extensive it was or whether it listed her own publications or ones she may have relied on. Because Koch is assigning error, he has the responsibility to include relevant exhibits in the record before this Court. *Fritts v. Liddle & Moeller Constr., Inc.*, 144 Idaho 171, 173, 158 P.3d 947, 949 (2007). "When the record on appeal does not contain the evidence taken into account by the district court, this Court must necessarily presume that the evidence justifies the decision and that the findings are supported by substantial evidence." *Id.* Moreover, the bases for Yeager's conclusions were adequately explored by defense counsel on cross-examination with no particular difficulty. *See Lipscomb*, 539 F.3d at 38 (stating that the goal of Rule 16 is "to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination").

Accordingly, we hold that substantial and competent evidence supports the district court's decision that the State's expert disclosures were sufficient.

**B. The district court did not abuse its discretion in overruling Koch's objection to the prosecutor's comments made during her opening statement.**

Koch contends that the district court erred in overruling his objection to comments made by the prosecutor during the State's opening statement. Specifically, Koch contends that the court should have sustained his objection to the prosecutor's statement that Koch talked to C.C. about "things he should have never shared with a 13-year-old girl," as argumentative.

The purpose of opening remarks is "to inform the jury of the issues of the case and briefly outline the evidence each litigant intends to introduce to support his allegations or defenses." *State v. Griffith*, 97 Idaho 52, 56, 539 P.2d 604, 608 (1975). "Counsel should not at that time attempt to impeach or otherwise argue the merits of evidence that the opposing side has or will present." *Id.* Koch argues that the State's comment was not a statement of the evidence, but rather "a judgmental comment intended to prejudice the jurors against Mr. Koch."

Looking at the context of the prosecutor's comment, it is clear that the prosecutor was just attempting to summarize the evidence to be presented at trial. The prosecutor began her

opening remarks by describing the grooming behavior Koch exhibited towards C.C., which included "talking to [C.C.] about things he should have never shared with a 13-year-old girl." Koch then objected and the district court overruled the objection. The prosecutor went on to explain that Koch "talked to [C.C.] often about the relationship [he] had with his wife," "things about their sex life, about their private life, and what they fought over." This portion of the opening statement previewed C.C.'s later trial testimony, in which C.C. testified that Koch talked to her about his oral sex preferences and pornography he watched with his wife.

The State's characterization of these conversations as ones that "should never be had with a 13-year-old girl," is an acceptable summary of the evidence, and thus, allowable commentary for the opening statement. Therefore, the district court did not abuse its discretion in overruling Koch's objection to the prosecution's opening statement.

**C. The district court did not abuse its discretion in overruling Koch's foundation objections.**

Koch contends that the district court abused its discretion in overruling his foundation objections to testimony describing various text and email messages sent by Koch to C.C. and to C.C's mother. He also contends that the court erred in overruling his foundation objections to the admission of the confrontation call recording. In reply, the State argues it provided proper foundation and that defense counsel's concerns go to the weight of the evidence, not its admissibility.

The Idaho Rules of Evidence require "authentication or identification as a condition precedent to admissibility," which "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." I.R.E. 901(a). Rule 901(b) contains an illustrative, but not exhaustive, list of suggested methods of identification, such as "[t]estimony of a witness with knowledge that a matter is what it is claimed to be" or examination of the evidence's "distinctive characteristics and the like," including "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." I.R.E. 901(b)(1), (4). Whether there is a proper foundation upon which to admit evidence is a matter within the trial court's discretion. *Harris, Inc. v. Foxhollow Constr. & Trucking, Inc.*, 151 Idaho 761, 770, 264 P.3d 400, 409 (2011).

This Court has not previously considered the foundational requirements for admitting emails and text messages. However, the Court of Appeals has considered the admissibility of online chat room transcripts in *State v. Glass*, 146 Idaho 77, 190 P.3d 896 (Ct. App. 2008).

6

There, the Court of Appeals held that the State laid an adequate foundation "because the State's evidence was sufficient to show that the transcript and the profile—and the person behind the screen name—were connected to the alleged criminal behavior that formed the basis of the charge." *Id.* at 81–82, 190 P.3d at 900–01. The Court of Appeals elaborated that even if evidence tying the defendant to the screen name was necessary before the exhibits could be admitted, that foundation was provided because the defendant arrived for a meeting as arranged in that private correspondence. *Id.* at 82, 190 P.3d at 901.

Because Idaho Rule of Evidence 901 is based on Federal Rule of Evidence 901, how other jurisdictions have interpreted the federal rule's requirements with regard to the admission of emails and text messages is instructive in this case. Other jurisdictions have recognized that electronic evidence may be authenticated in a number of different ways consistent with Federal Rule 901 and corresponding state statutes. Courts have not required proponents offering printouts of emails, internet chat room dialogues, and cellular phone text messages to authenticate them with direct evidence, such as an admission by the author or the testimony of a witness who saw the purported author typing the message. *See, e.g.*, *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012). Rather, courts have held that circumstantial evidence establishing that the evidence was what the proponent claimed it to be was sufficient. *See, e.g.*, *State v. Thompson*, 777 N.W.2d 617, 624 (N.D. 2010) (providing a comprehensive review of other jurisdictions' authenticity requirements for electronic communications). Circumstantial proof might include the email address, cell phone number, or screen name connected with the message; the content of the messages, facts included within the text, or style of writing; and metadata such as the document's size, last modification date, or the computer IP address. *See Fluker*, 698 F.3d at 999; *United States v. Siddiqui*, 235 F.3d 1318, 1322–1323 (11th Cir. 2000); *United States v. Safavian*, 435 F. Supp. 2d 36, 40–41 (D.D.C. 2006).

In support of his argument that eyewitness testimony is necessary to authenticate a text message when the defendant does not admit to sending it, Koch points to the Nevada Supreme Court decision, *Rodriguez v. State*, 273 P.3d 845, 849 (Nev. 2012). However, *Rodriguez* is in line with what the majority of jurisdictions have held. *Id.* at 849 (requiring either direct or circumstantial corroborating evidence of authorship in order to authenticate a text message). The facts of *Rodriguez* are unique and distinguishable from the case at hand. In *Rodriguez*, the text messages in question were sent from the victim's phone, which the defendant and his

7

codefendant took from the victim after assaulting her. *Id.* at 849–50. Thus, the State sought to introduce text messages that were sent from a phone while it was in the possession of two people, neither of which was the owner of the phone. *Id.* The Nevada Supreme Court ruled that the only text messages admissible against the defendant were the text messages the defendant could actually be seen sending on bus surveillance video. *Id.* at 850. The court required actual proof of the defendant sending the text message because there was direct evidence that the text messages were sent while the phone was in the possession of multiple people other than the phone's actual owner. *Rodriguez* does not stand for the proposition that eyewitness testimony of who sent a text is required for its authentication, but rather that where evidence establishes that a phone is in multiple people's possession at the time incriminating messages are sent, a higher level of proof that the defendant sent the incriminating messages is required.

While direct evidence is not required to authenticate a text message or email, most jurisdictions require something more than just confirmation that the number or email address belonged to a particular person. *See, e.g.*, *In re F.P.*, 878 A.2d 91, 93–95 (Pa. Super. Ct. 2005) (instant messages properly authenticated through circumstantial evidence including screen names and context of messages and surrounding circumstances); *Commonwealth v. Williams*, 926 N.E.2d 1162 (Mass. 2010) (admission of MySpace message was error where proponent advanced no circumstantial evidence as to security of MySpace page or purported author's exclusive access). Often it was important that there be evidence that the emails, instant messages, or text messages themselves contained factual information or references unique to the parties involved. For example, in *Safavian* the District of Columbia federal district court held that email messages were properly authenticated where the email addresses contained distinctive characteristics including the name of the person connected to the address, the bodies of the messages contained a name of the sender or recipient, and the content of the emails further authenticated them as being from the purported sender to the purported recipient. 435 F.Supp.2d at 40.

Courts have acknowledged the unique problems that arise in the context of authenticating electronic communications. The Connecticut Court of Appeals noted that authentication is especially important in this context "because an electronic communication, such as a Facebook message, an email or a cell phone text message, could be generated by someone other than the

named sender." *State v. Eleck*, 23 A.3d 818, 822 (Conn. App. 2011). In response to such concerns, the Superior Court of Pennsylvania aptly stated:

> The argument is that e-mails or text messages are inherently unreliable because of their relative anonymity and the fact that while an electronic message can be traced to a particular computer, it can rarely be connected to a specific author with any certainty. Unless the purported author is actually witnessed sending the e-mail, there is always the possibility it is not from whom it claims. As appellant correctly points out, anybody with the right password can gain access to another's e-mail account and send a message ostensibly from that person. However, the same uncertainties exist with traditional written documents. A signature can be forged; a letter can be typed on another's typewriter; distinct letterhead stationary can be copied or stolen.

*In re F.P.*, 878 A.2d at 95. The court then concluded that email messages and similar forms of electronic communication can be properly authenticated within the existing framework, i.e., evaluated "on a case-by-case basis as any other document to determine whether or not there has been an adequate foundational showing of their relevance and authenticity." *Id.* at 96.

As the reasoning of these jurisdictions illustrates, establishing the identity of the author of a text message or email through the use of corroborating evidence is critical to satisfying the authentication requirement for admissibility. We thus conclude that, when there has been an objection to admissibility of a text message, the proponent of the evidence must explain the purpose for which the text message is being offered and provide sufficient direct or circumstantial corroborating evidence of authorship in order to authenticate the text message as a condition precedent to its admission. Thus, authenticating a text message or email may be done in much the same way as authenticating a telephone call under Idaho Rule of Evidence 901(b)(6).

### 1. Text messages to C.C.'s mother

C.C.'s mother testified that she received two text messages from Koch. Before testifying as to the content of the first text message, C.C.'s mother testified that she had previously received text messages and phone calls from Koch on her cell phone and that Koch's phone number would appear on her phone when he called. When C.C.'s mother received the first text message, she testified that the incoming phone number was the same as the as the one utilized by Koch when he had previously called. As to the second text message C.C.'s mother testified to, she explained that she had obtained a new cell phone and so did not recognize the number

sending the message. C.C.'s mother testified that she responded by inquiring as to the identity of the sender, who then identified himself as Michael Koch.

As to the contents of the first message, C.C.'s mother testified:

The text message said that he was very sorry that C[.] and T[.] were no longer friends, but blamed it all on T[.], that T[.] was too clingy and that he wanted to thank me for allowing them to have been part of C[.]'s life, that she was an amazing young woman.

As to the second text, while C.C's mother did not recognize the phone number, the sender identified himself as Michael Koch. The sender also stated that someone had hacked into his computer and was sending emails under his name.

There was insufficient foundation laid prior to the admission of the content of the first text message C.C.'s mother received. While C.C.'s mother testified that she recognized the number as Koch's and had communicated with him previously at that number, more than just confirmation that the number belonged to the person in question is required when the message's authentication is challenged. *See* I.R.E. 901(a) ("authentication or identification as a condition precedent to admissibility"). However, the reference to Koch's daughter's friendship and recent fight with C.C. was sufficient to confirm the sender's identity as Koch. Thus, the content along with the identity of the number furnished sufficient authentication or identification to support admissibility. It was unnecessary for the State to present evidence, as Koch contends, that someone saw Koch actually send the message.

There was also insufficient foundation laid as to the second text message C.C.'s mother testified to receiving. C.C's mother testified that she did not recognize the number and relied on the sender's assertion that he was Michael Koch. This self-identification would likely be sufficient if the State had provided evidence that the number sending the text was connected to Koch.[2] However, copies of these texts were not offered into evidence, and C.C.'s mother did not recognize the number, so there is no evidence beyond the self-identification connecting the text to Koch. The content of this text also did not provide any connection to Koch. Therefore, the district court abused its discretion in overruling Koch's objection. Koch does not argue that the admission of the second text message was prejudicial. Indeed, the second text message actually

---

[2] A similar standard is required to authenticate telephone conversations. I.C.R. 901(b)(6) ("Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called.").

supports Koch's argument that he did not send the preceding, much more damaging text message. Thus, any error in admitting testimony regarding this second text message was harmless.

  2. Text Messages to C.C.

  Before C.C. testified about the text messages she exchanged with Koch on October 27, 2011, she testified that she had called and talked with Koch on her phone in the presence of detectives as part of the investigation into Koch's conduct.[3] C.C. also testified that she called Koch again several days later at the same phone number and the call went to Koch's voicemail. She testified that she left a voicemail asking Koch to call her, which she followed up with a text message asking him to call her. C.C. identified State's Exhibit 17 as photographs depicting her text message conversation with Koch. She also identified the two phone numbers displayed on the text messages as hers and Koch's, respectively.

  Koch objected to the admission of these text messages at trial, and the district court allowed Koch's counsel to question C.C. in aid of his objection.

> COUNSEL: Were you present on the other end with the person that was entering these text messages?
>
> THE WITNESS: No, but he'd made --
>
> COUNSEL: Okay. I just need you to answer the question. Were you present on the other end with the person who made these text messages?
>
> THE WITNESS: No.

Koch's foundation objection appears to have been based solely on the fact that C.C. could not provide eyewitness testimony that Koch was sending her the text messages. He did not ask C.C. any questions concerning how she knew it was Koch responding to her texts. Indeed, C.C. attempted to explain how she knew it was Koch when defense counsel cut her off.

  Here, the State provided adequate foundation for the admission of the text messages, especially in light of Koch's objections only pertaining to the lack of direct, eyewitness evidence. C.C. testified that she recognized Koch's number and had previously been in frequent communication with him via text message. Thus, the State provided "testimony of a witness with knowledge that a matter is what it is claimed to be." *See* I.R.E. 901(b)(1). Moreover, the content of the messages further corroborates C.C.'s identification of Koch as being the sender. *See* I.C.R.

---

[3] This phone call was the recorded confrontation call that was later offered into evidence and will be discussed below. The phone call was made on October 6, 2011. The text message exchange occurred between 10:39 a.m. on October 27, 2011, and 5:32 p.m. on October 27, 2011.

901(b)(4) ("*Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."). For example, the sender referenced Koch's daughter by name, noting at one point that he had a birthday present for C.C. from his daughter.[4] In her texts, C.C. makes several references to her phone call with Koch on October 6, 2011, apologizing for asking him questions while his daughter was in the car. The sender also made specific reference to the content of the previous phone call, asking, without any prompting, who told C.C. that he was getting divorced. This is more than sufficient circumstantial evidence to establish foundation for the admission of the text message conversation. Questions Koch raises about the lack of eyewitness testimony establishing that he sent the actual texts goes to the weight of the evidence, not the admissibility. Therefore, the district court did not abuse its discretion in overruling Koch's foundation objections to the admission of the text messages C.C. received from a number she identified as Koch's.

### 3. Email Message to C.C.

Prior to testifying about the content of an email she received from Koch, C.C. testified that she was familiar with Koch's email address because it was identified within her email account contact list as belonging to Koch. Koch possessed C.C.'s email address, C.C. explained, because Salina Koch, Koch's wife, utilized it for Girl Scout communications. In addition to C.C.'s testimony that Koch had previously communicated with her via email and that she recognized the email address, the content of the email provides sufficient circumstantial evidence to constitute adequate foundation. While the actual email does not appear to have been offered into evidence, C.C. testified that "[h]e had emailed me asking if my dad was okay because my dad is a fire fighter and there had been an accident with some fire fighters and he was just checking to see if my dad was okay."

The fact that C.C.'s father was a fire fighter is the type of information a family friend with whom C.C. had spent substantial amounts of time with would know. Additionally, Koch mentions this email specifically in the text message exchange that occurred between himself and C.C., although the text messages were entered into evidence subsequent to C.C.'s testimony regarding the email. Therefore, the content of the email was admissible because it contained references unique to C.C. and Koch.

---

[4] During cross-examination of Koch's daughter, she corroborated that she had a birthday present for C.C. and that her father offered to take it to C.C.

4. Telephone Call from C.C. to Koch.

Finally, Koch contends that the district court abused its discretion in overruling his foundation objection to the admission of an audio recording of the confrontation call.

In this case, prior to the admission of the audio recording of the confrontation call between C.C. and Koch, the State elicited testimony from Detective McGilvery, the officer who facilitated the call. Detective McGilvery testified that he was physically present with C.C. when she made the call to Koch and that he reviewed State's Exhibit 19 and confirmed it to be an audio recording of that phone call. He also testified that C.C. used her own phone to make the call, which demonstrated that C.C. knew how to get into contact with Koch. Earlier in the trial, C.C. testified that she spoke with Koch during the confrontation call and did not identify herself when Koch answered because he recognized her voice. When the State moved for the recording's admission as Exhibit 19, Koch's only questions in aid of his foundation objection were whether Detective McGilvery was present with the person answering C.C.'s calls and whether he had at that time met Koch. As previously discussed, eyewitness testimony confirming that the person called is the one on the phone is not required.

On appeal, Koch argues that because Detective McGilvery did not know Koch and C.C. did not testify that Exhibit 19 was an accurate recording, insufficient foundation was laid for the recording's admission. Koch asserts that establishing the foundation for a "telephone call requires more than just two state witnesses talking about the same telephone call." However, all that is required to authenticate a phone call made to a number assigned to a particular person are circumstances that "show the person answering to be the one called." I.C.R. 901(b)(6). Taken together, C.C. and Detective McGilvery's testimony establish sufficient circumstances to show that the person answering Koch's phone was indeed Koch.

Moreover, the content of the phone call provides overwhelming evidence that Koch was indeed the person talking to C.C. in the recording. The caller clearly recognizes C.C. and her number as there are no introductions at the beginning of the call. C.C. makes several references to Koch's daughter by name and to Koch's wife by name. She also calls him Michael several times, and he says her name to her repeatedly throughout the conversation. Therefore, the district court did not abuse its discretion in overruling Koch's foundation objections to the admission of the confrontation call recording.

**D. The district court did not err in overruling Koch's relevance objections.**

13

Koch contends that the district court erred by admitting certain evidence at trial on relevance grounds. Specifically, Koch contends that the court erred by admitting: (1) C.C.'s testimony that Koch told her he did not enjoy oral sex with his wife, and (2) Salina Koch's testimony that she had expressed her belief to Detective McGilvery that her husband would not have "done anything" if he had been happy in their marriage. In response, the State argues that C.C.'s challenged testimony was relevant to the crimes charged because it constituted grooming behavior. As to Salina Koch's challenged testimony, the State contends that Koch failed to preserve his relevance objection.

To be admissible, evidence must be relevant. I.R.E. 401, 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Whether a fact is material is determined by its relationship to the legal theories presented by the parties. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). This Court reviews the question of relevancy de novo. *State v. Gomez*, 137 Idaho 671, 674, 52 P.3d 315, 318 (2002).

1. Objection to C.C.'s testimony

At trial, C.C. testified that Koch engaged her in explicit conversation about his sex life with his wife. Specifically, C.C. testified that Koch told her that he did not like the way his wife performed oral sex on him. The district court overruled Koch's relevance objection to this testimony.

Koch argues that the district court should have sustained his objection because whether or not he enjoyed his wife's oral sex techniques has nothing to do with whether he engaged in the acts alleged in the indictment. The relevance of this testimony does not stem from Koch's opinions about his wife's oral sex techniques, but from the very fact that Koch engaged C.C. in such sexually explicit conversation. These explicit conversations, along with Koch purchasing underwear for C.C., and expressing his love for her, constituted evidence of Koch grooming C.C. for sexual abuse. Evidence of such grooming behavior is relevant to the charged conduct in that it constitutes a "continuing criminal design to cultivate a relationship with [the victim] such that she would concede to his sexual demands." *State v. Truman*, 150 Idaho 714, 722, 249 P.3d 1169, 1177 (Ct. App. 2011). Accordingly, evidence that Koch had sexually explicit conversations with C.C. was relevant to the charges against him and the district court did not err in overruling Koch's objection.

14

2. Objection to Salina Koch's testimony

At trial, the State questioned Koch's wife about her interview with Detective McGilvery following her husband's arrest. In the course of that examination, the prosecutor asked Salina Koch about her statements to the detective that she was responsible for Koch's actions because "he wouldn't have done anything" if he had been happy in their marriage.

Koch made two objections over the course of the challenged portion of this cross-examination. Koch first objected on the grounds that the State's question was vague. Koch then made a generic objection without specifying a ground, which the court overruled. After the court overruled this objection, Koch requested a sidebar with the court, a transcript of which is not in the record. Following the sidebar, the State continued its line of questioning, asking: "Do you recall telling Detective McGilvery that—or explaining to Detective McGilvery that if Michael had been happy in your relationship, that he wouldn't have done anything?" Koch did not object to this question, and Salina Koch responded, "I do remember that comment, yes, ma'am." Koch does not contend that he objected to this question, only that he had previously objected to a similar question. Thus, Koch's relevancy challenge to Salina Koch's testimony was not preserved by a timely objection below, and is not reviewable. *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010); *State v. Vondenkamp*, 141 Idaho 878, 885, 119 P.3d 653, 660 (Ct. App. 2005) ("An objection on one ground will not preserve a separate and different basis for excluding the evidence.").

**E. The district court did not abuse its discretion in overruling Koch's nonresponsive objections.**

Koch contends that the district court abused its discretion in overruling his objections to certain trial witness responses as nonresponsive.

Under Idaho Rule of Evidence 611 the trial court shall:

> [E]xercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

I.R.E. 611(a). Exercise of this control is a question of the trial court's discretion. *State v. Hairston*, 133 Idaho 496, 503, 988 P.2d 1170, 1177 (1999).

1. C.C.'s testimony on direct examination as to her reasons for not attending the charter school.

At trial, the following exchange occurred during the State's direct examination of C.C.:

15

| Prosecutor: | Okay. So other than with the exception of finishing up Girl Scouts, did you—did you ever even see the defendant again? |
|---|---|
| C.C.: | No. I even wouldn't go to Renaissance High School, the high school I had gotten into, because— |
| Defense: | Objection. Your Honor |
| Court: | Overruled. |
| Defense: | It's nonresponsive. |
| Court: | Overruled. |
| Prosecutor: | Did–what was that you were saying about– |
| C.C.: | I had been accepted along with T.K. into Renaissance High School and I didn't go there, I chose not to go because I didn't want to see them. I didn't want to see Michael or T.K. or Salina. |

Koch contends that he objected to this testimony on two separate grounds—relevancy and nonresponsiveness. However, the transcript shows that he only made a nonresponsive objection. Koch clearly made an objection, which the court overruled before he could articulate grounds. He then articulated the grounds—nonresponsive—and the court stated again that the objection was overruled. At the next break in the trial, the court explained that it overruled Koch's nonresponsive objection because such an objection cannot generally be raised by the non-questioning party. Therefore, Koch did not preserve a relevancy challenge to C.C.'s testimony.

As to Koch's challenge to C.C.'s direct testimony as being nonresponsive, this Court has held that a nonresponsive objection from the nonquestioning party is generally inappropriate. Specifically, this Court has stated:

> The right to have an irresponsive answer of a witness stricken out is a right of the party examining the witness, and not a right of the party adverse to the examiner; if the answer of a witness is competent and pertinent in itself, the adverse party has no right to have it expunged from the record merely because it was irresponsive; in such a case it is optional with the court to strike it out, and a denial of a motion to do so is no ground of error. The party examining the witness is not, however, bound or precluded by an irresponsive answer, and may himself object to its competency, although the person is his own witness. He would seem to have an absolute right to have the irresponsive matter expunged, regardless of its competency.

*State ex rel. Rich v. Bair*, 83 Idaho 475, 481–82, 365 P.2d 216, 220 (1961). Thus, the district court did not abuse its discretion by overruling Koch's nonresponsive objection to C.C.'s testimony during the prosecution's direct examination.

16

<u>2. C.C.'s statements on cross-examination regarding her activities following the first time she had sex with Koch.</u>

The following exchange took place during defense counsel's cross-examination of C.C.:

Defense: And you testified when you allegedly had sex the first time, it was on the bed. And then you were upset and your testimony was that [Koch] told you to go take a bath. So you were laying on the bathroom floor and crying?

C.C.: No. He told me to go take a bath in T.K.'s bedroom because he's very adamant about douching and things after you have sex, so—

Defense: Okay. Judge, we would object to – it was nonresponsive –

Court: Overruled.

Defense: – move to strike, admonish the jury.

Court: No. I'm going to overrule the objection.

The Prosecutor then repeated the question:

Prosecutor: After you allegedly had sex, did you – Michael told you to go take a shower?

C.C.: Bath, yes.

Defense: Calls for a yes or no response.

Court: She's answering your question, [defense counsel]. She corrected that he asked her – she's answering your question. So I'm overruling the objection. I'm not sure what you are objecting to.

Defense: That it was nonresponsive.

The Court: Overruled.

C.C.'s answer was responsive to defense counsel's question. Defense counsel asked C.C. if she laid down on the floor and cried after she had sex with Koch. C.C. did not refuse to answer the question—she responded in the negative, explaining what she was doing instead and why she was doing it. Koch did not object to the content of this testimony on relevance or any other grounds. As to Koch's second responsiveness objection, it is clear that C.C. answered the question in the affirmative, merely correcting that it was a bath, not a shower. The district court acted within its discretion to exercise reasonable control over the mode and order of interrogation when it overruled Koch's nonresponsive objections. It is apparent the answers were competent and pertinent to the questions asked.

17

**F. The district court did not err in allowing Detective McGilvrey's testimony regarding Salina Koch's prior statement for impeachment purposes.**

Koch contends that the district court erred by overruling certain objections he made during the State's direct examination of Detective McGilvery. Specifically, he contends that the court erred in overruling his objections to Detective McGilvery's testimony that Salina Koch expressed suspicion that something was going on between C.C. and her husband. Koch contends that this exchange did not constitute proper impeachment because Detective McGilvery's challenged testimony was not inconsistent with Salina's earlier trial testimony. The State responds that the record establishes that Detective McGilvery's testimony regarding Salina's suspicions was inconsistent with her trial testimony, during the course of which she appeared to champion her husband's innocence. The State further argues, that if admission of this testimony was in error, it was harmless.

At trial in this case, the State called Salina Koch as a witness and questioned her about a recorded interview she participated in with Detective McGilvery, among other things. The exchange was occasionally contentious, and the district court declared Salina to be a hostile witness. The prosecutor asked Salina if she had made various specific statements to Detective McGilvery. Salina admitted making some of the statements, denied making others, and claimed not to remember making others. The prosecutor did not ask Salina if she remembered stating that she had had concerns that something was going on between C.C. and Koch. However, she denied that "the defendant and C.C. seemed to enjoy a very close relationship." Throughout her testimony, Salina appeared to attempt to support her husband, even blurting out at one point, "my husband is innocent."

The State moved to enter the recording of Detective McGilvery's interview with Salina into evidence under Idaho Rule of Evidence 612, arguing that Salina admitted she recently listened to it and it did not aid in her recollection. Having not previously heard the recording, the district court declined to allow the recording itself to be admitted into evidence and instead ruled that the State could call Detective McGilvery to testify about the interview, to the extent Salina's interview statements were inconsistent with her trial testimony. Before Detective McGilvery testified, the district court instructed the jury that testimony regarding Salina's interview statements were to be considered only for the purpose of impeaching Salina's prior trial testimony, and not for the truth of any matter asserted.

18

A witness's credibility can be impeached by any party, including the party which called the witness. I.R.E. 607. Idaho Rule of Evidence 613 allows the use of prior inconsistent out-of-court statements to impeach a witness. These statements are not hearsay because "they are not offered for the truth of any of the facts asserted, but rather, solely to impeach the credibility of the witness." *State v. Wood*, 126 Idaho 241, 248, 880 P.2d 771, 778 (Ct. App. 1994). Accordingly, evidence introduced under I.R.E. 613 must be relevant for the proper purpose of impeachment. *State v. Perry*, 150 Idaho 209, 219, 245 P.3d 961, 971 (2010); I.R.E. 401. Whether evidence is relevant is reviewed de novo. *Bettwieser v. New York Irrigation Dist.*, 154 Idaho 317, 328, 297 P.3d 1134, 1145 (2013). However, once relevance is established, the trial judge has broad discretion in deciding whether such evidence is admissible for impeachment purposes. *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 154 Idaho 269, 278, 297 P.3d 232, 241 (2013).

Here, Koch contends Detective McGilervy's testimony that Salina Koch had previously told him she had concerns that something was going on between C.C. and Koch was inadmissible because she never denied making this statement. This Court has not held, and the rule does not imply, that an outright denial of having made a prior statement is required in order for the prior statement to be used for impeachment purposes. *See* I.R.E 613. The question is whether the support Salina Koch showed in her testimony for her husband and her denial that he seemed to have had a close relationship with C.C. are inconsistent with Salina's prior statement that she had suspicions something was going on between C.C. and her husband.

This Court has not addressed the level of inconsistency required for a prior inconsistent statement to be admitted under I.R.E. 613. *But see, State v. Arledge*, 119 Idaho 584, 588, 808 P.2d 1329, 1333 (Ct. App. 1991) (finding that prior statement was admissible because it "tended to contradict or undermine critical parts of her trial testimony"). However, the majority of jurisdictions appear to follow a standard similar to the one that McCormick, Wigmore, and others urge, which "allows the prior statement whenever a reasonable man could infer on comparing the whole effect of the two statements that they had been produced by inconsistent beliefs." *See, e.g.*, *U.S. v. Morgan*, 555 F.2d 238, 242 (9th Cir. 1977) (quoting 4 *Weinstein's Evidence*, Matthew Bender, 801-76 – 801-76.1 (1976)); *see also Arnold v. Groose*, 109 F.3d 1292, 1297 (8th Cir. 1997) ("The cases have developed a standard of minimal inconsistency, under which almost any divergence will suffice to permit use of the prior statement.") (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence*, ¶ 801(d)(1)(A)[01], at 801–142

19

(1996)); *U.S. v. Barrett*, 539 F.2d 244, 254 (1st Cir. 1976) ("To be received as a prior inconsistent statement, the contradiction need not be 'in plain terms. It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict.'").

We decline to adopt a rigid definition that an inconsistency is only found when it is apparent on the face of two statements to the extent that it is the only possible inference to be drawn. Trial judges must retain a high degree of discretion in deciding the exact point at which a prior statement is sufficiently inconsistent with a witness's trial testimony to permit its use in evidence. Under an abuse of discretion standard, it was not error for the district court to admit Detective McGilvrey's testimony as to Salina's prior statement. Salina's testimony denying a close relationship and declaring Koch's innocence can reasonably be inferred to have arisen from a belief inconsistent with the belief that gave rise to her prior statement articulating suspicions as to something going on between C.C. and Koch. Essentially, Salina's prior statement tends to undermine critical parts of her trial testimony. Thus, her prior statement is sufficiently inconsistent with her trial testimony to be relevant for impeachment purposes and the district court did not err in allowing this impeachment testimony.

### G. Koch has failed to show cumulative error.

Koch contends that the cumulative effect of the above errors deprived him of a fair trial. The State responds that the cumulative error doctrine does not apply because Koch has failed to show any error, much less two or more errors.

"Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. However, a necessary predicate to the application of the doctrine is a finding of more than one error." *State v. Ellington*, 151 Idaho 53, 70, 253 P.3d 727, 744 (2011) (quoting *State v. Perry*, 150 Idaho 209, 230, 245 P.3d 961, 982 (2010)). The presence of errors does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial. *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998) (quoting *Bruton v. United States*, 391 U.S. 123, 135 (1968)).

The only error Koch succeeded in showing was the trial court's error in overruling his foundation objections to C.C.'s mother's testimony regarding the second text message she received. However, Koch did not argue that the admission was prejudicial and the message's

20

content actually supports Koch's argument that he did not send the preceding, much more damaging text. Therefore, Koch has failed to show that this error affected his substantial rights and he is not entitled to a vacation of the judgment under the cumulative error doctrine. *State v. Parton*, 154 Idaho 558, 569, 300 P.3d 1046, 1057 (2013).

## IV. CONCLUSION

We hold that: (1) substantial and competent evidence supports the district court's decision that the State's expert disclosure was sufficient; (2) the district court did not abuse its discretion in overruling Koch's objection to the prosecutor's opening statement; (3) any errors that may have been committed in establishing foundation were harmless; (4) the district court did not abuse its discretion in overruling Koch's relevance and nonresponsive objections; (5) the district court did not err in allowing impeachment evidence; and (6) the doctrine of cumulative errors does not necessitate a reversal. Therefore, we affirm Koch's judgment of conviction.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**