**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51696**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Opinion Filed: December 18, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| ZACHARIAH RAY KLINE, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas W. Whitney, District Judge.

Judgment of conviction for felony intimidating a witness, misdemeanor second degree stalking, and misdemeanor intimidating a witness, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

———————————————————————

HUSKEY, Judge

Zachariah Ray Kline appeals from his judgment of conviction for felony intimidating a witness, misdemeanor second degree stalking, and misdemeanor intimidating a witness. Kline argues the district court abused its discretion in admitting screenshots of Facebook messages at trial because the State did not provide sufficient foundation that Kline authored the messages. We conclude the district court did not err in finding sufficient foundational corroboration of the evidence such that the evidence was admissible. Kline's judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

When Kline and his wife K.F. were married, K.F. created a Facebook account for Kline, including the profile picture, username, and password. After Kline and K.F. separated, Kline sent K.F. messages from that account containing various complaints, slurs, and threats against K.F.

1

As a result of these messages, K.F. obtained a temporary civil protection order against Kline. Shortly thereafter, Kline sent K.F. a Facebook message that read: "You know a protection order is not going to stop me from coming near you or talking to you." Kline sent K.F. a subsequent message, telling K.F. he had "people" who had eyes on her and that he hoped K.F. and her boyfriend "get killed one of these days." At the end of the message, Kline stated: "If I find out you are talking to the pigs or my PO, I will hunt you down myself. I'll make sure your body disappears and will never be found. This is my last warning to you."

Following another series of threatening messages, K.F. contacted the police to report the messages as a violation of the protection order. Kline was arrested and charged with two counts of felony intimidating a witness, Idaho Code § 18-2604(3); one count of misdemeanor second degree stalking, I.C. § 18-7906; and one count of misdemeanor intimidating a witness, I.C. § 18-2604. Kline pleaded not guilty, and the case proceeded to trial.

At trial, K.F. testified that she created the Facebook account for Kline in October 2022 at his request and provided the username and password to Kline, both verbally and by text message. K.F. also testified that after May 16, 2023, she no longer had access to the account. She testified that once, while with her mother, K.F. tried but was unable to access the account. K.F. further testified she never sent messages to anyone, including herself, from Kline's Facebook account.

The State moved to admit three exhibits, each containing Facebook messages sent from Kline's Facebook account to K.F. Kline objected to the admission of each of the exhibits on hearsay and foundation grounds; the district court overruled the objections and the exhibits were admitted.

At the conclusion of the State's case, Kline made a motion for judgment of acquittal pursuant to Idaho Criminal Rule 29(a). The district court granted Kline's motion as to Count II, felony intimidating a witness, because the State failed to establish jurisdiction that either Kline or K.F. were in Idaho at the time K.F. received the message that formed the basis for the charge. The jury found Kline guilty on the three remaining counts. Kline appeals.

## II.

## STANDARD OF REVIEW

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.
## ANALYSIS

On appeal, Kline asserts the district court abused its discretion in admitting the Facebook messages over Kline's foundation objection because the court did not act consistently with applicable legal standards. Specifically, Kline argues the State did not provide sufficient direct or circumstantial corroborating evidence of authorship. The State responds that the district court did not abuse its discretion because the State presented sufficient corroborating evidence of authorship for a reasonable factfinder to find that Kline owned and administered the Facebook account the messages were sent from.

The Idaho Rules of Evidence require that evidence be authenticated or identified in order to be admissible. I.R.E. 901(a). The proponent offering the evidence must produce "evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.* Idaho Rule of Evidence 901(b) contains an illustrative, but not exhaustive, list of suggested methods of identification, such as: testimony of a witness with knowledge that the evidence is what it is claimed to be; and examination of the distinctive characteristics of the evidence, including "appearance, contents, substance, internal patterns, or other distinctive characteristics," taken in conjunction with all the circumstances. I.R.E. 901(b)(1), (4). This Court interprets identical rules in conformance with the interpretation of the same rules by the federal courts. *State v. Augerlavoie*, 173 Idaho 161, 167, 539 P.3d 981, 987 (2023). Idaho Rule of Evidence 901 is identical to Federal Rule of Evidence 901. "Rule 901's requirements are satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (internal quotations omitted).

To admit electronic messages, there must be some evidence to show that the transcript of the messages, the account profile, and the person behind the screen name are connected to the alleged criminal behavior that formed the basis of the charge. *State v. Glass*, 146 Idaho 77, 81-82, 190 P.3d 896, 900-01 (Ct. App. 2008). The Idaho Supreme Court addressed the type of evidence that must be established to properly authenticate a text message or email in *State v. Koch*, 157

Idaho 89, 96-98, 334 P.3d 280, 287-89 (2014). In *Koch*, the Idaho Supreme Court held that, "circumstantial evidence establishing that the evidence was what the proponent claimed it to be was sufficient." *Id*. at 96, 334 P.3d at 287. The Court then provided the following examples of what might constitute circumstantial proof: "the email address, cell phone number, or screen name connected with the message; the content of the messages, facts included within the text, or style of writing; and metadata such as the document's size, last modification date, or the computer IP address." *Id*. Circumstantial evidence of authorship can also be established if "the emails, instant messages, or text messages themselves contained factual information or references unique to the parties involved." *Id.* at 97, 334 P.3d at 288.

Ultimately, the Court held:

When there has been an objection to admissibility of a text message, the proponent of the evidence must explain the purpose for which the text message is being offered and provide sufficient direct or circumstantial corroborating evidence of authorship in order to authenticate the text message as a condition precedent to its admission.

*Id.*

Kline does not challenge the first element--the purpose for which the screenshots were being offered--but argues that "all the State presented in this case was confirmation that the Facebook account was in Mr. Kline's name." We disagree. , K.F. testified that she made the Facebook account for Kline, at his request, in October 2022. While K.F. originally created the username and password, she testified that after May 16 the following year, she no longer had access to the account. She testified that once, while she was with her mother, K.F. tried to access the account but was unable to do so. K.F. further testified that she never sent messages to anyone, including to herself, from Kline's Facebook account. The exhibits all contain various Facebook messages that were sent to K.F. after the date K.F. no longer had access to the account. K.F. also testified, and the exhibits illustrate, that the profile picture for the account had been a photograph of her and Kline, but on May 27 the profile picture changed to a photograph of Kline. Thus, the State met the corroboration requirements set forth in *Koch* by having K.F. corroborate the screen name connected with the messages, the content of the messages, and the facts included within the messages.

Although the district court did not explicitly find the content of the messages corroborated Kline's authorship, the district court found that unique language or references within the messages corroborated their authorship. For example, the district court noted the multiple references to the

4

victim killing herself, referring to law enforcement officers as "pigs," and a message that stated, "I really did love you." That language was the kind of language used by Kline as corroborated by K.F.'s mother, with whom Kline and K.F. lived for a short period of time. K.F.'s mother testified that the language in the messages was familiar to her and mimicked or mirrored Kline's speech pattern and language. Moreover, the content of the messages were not just threatening, but specific to circumstances and events involving Kline and K.F. Thus, the district court did not err in finding there was sufficient foundation to admit the exhibits containing the Facebook messages.

Kline argues that it is possible the Facebook messages were written by K.F., the boyfriend of K.F., or "someone else who was able to access Mr. Kline's account and had knowledge of [his and K.F.'s] rocky relationship," and the admission of evidence like this raises significant public policy concerns. The State responds that the possibility the messages could have been authored by someone else goes only to the weight of the evidence. The district court concluded:

> The other objection was foundation. And, again, as I just mentioned I found the state had laid an adequate foundation from [K.F.] creating the account to receiving the messages. So there is--there is enough evidence in here that the jurors could conclude that the messages were, in fact, sent by Mr. Kline. But, again, it's a weight, not admissibility, issue. The evidence is admissible.

The district court did not err in admitting the exhibits. The mere possibility that the messages could have been written by someone other than Kline goes to the weight of the evidence, not its admissibility. So long as the foundation concerning the accuracy of the message meets the minimal "sufficient to support a finding" standard of I.R.E. 901(a), defects in the foundation go to the weight, not admissibility, of the evidence. *State v. Barber*, 157 Idaho 822, 824, 340 P.3d 471, 473 (Ct. App. 2014).

Moreover, in *Koch*, the Idaho Supreme Court acknowledged this argument and agreed with the view of the Superior Court of Pennsylvania, which stated:

> The argument is that e-mails or text messages are inherently unreliable because of their relative anonymity and the fact that while an electronic message can be traced to a particular computer, it can rarely be connected to a specific author with any certainty. Unless the purported author is actually witnessed sending the e-mail, there is always the possibility it is not from whom it claims. As appellant correctly points out, anybody with the right password can gain access to another's e-mail account and send a message ostensibly from that person. However, the same uncertainties exist with traditional written documents. A signature can be forged; a letter can be typed on another's typewriter; distinct letterhead station[e]ry can be copied or stolen.

*Koch*, at 97, 334 P.3d at 288 (quoting *In re F.P.*, 878 A.2d 91, 95 (Pa. Super. Ct. 2005)).

5

The district court did not abuse its discretion in admitting the screenshots of the Facebook messages over Kline's foundation objection because the State provided sufficient circumstantial corroborating evidence of Kline's authorship.

## IV.

## CONCLUSION

Kline has failed to show the district court abused its discretion in overruling Kline's foundation objection and admitting screenshots of the Facebook messages. Therefore, we affirm Kline's judgment of conviction.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.

6