IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 35033

| STATE OF IDAHO, | ) | 2010 Opinion No. 4 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 19, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MAURICE RONALD TROUTMAN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for rape, vacated.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Maurice Ronald Troutman appeals from his judgment of conviction for rape. Specifically, he alleges prosecutorial misconduct deprived him of his rights to due process and a fair trial. For the reasons set forth below, we vacate the judgment of conviction and remand for a new trial.

## I.

## BACKGROUND

The evidence at trial showed that Troutman played for an arena football team called the Bakersfield Blitz. In July of 2007, the team traveled to Boise to play a game against the Boise Burn. While they were in Boise, they stayed at the Grove Hotel. H.S. and her friend, J.R., traveled to Boise that same weekend to watch the game and shared a room at the Grove Hotel. H.S. knew two of the coaches and had been to several other Blitz games that season. The game took place on Saturday, July 7, 2007. After the game many of the Blitz players, the coaches,

H.S., and J.R. went out to some downtown bars. H.S. consumed alcohol that night at the bars and when she got back to her hotel room, she took a sleeping pill, Ambien, to help her go to sleep. J.R. did not sleep in the room that night. Although it is disputed as to how Troutman acquired a key card to enter the room where H.S. was staying, he testified that after speaking to J.R. about whether she had any female friends who might be interested in partying with the team, J.R. handed him the key card to her room and suggested he go meet her roommate, H.S., in the room they were sharing. Thereafter, Troutman entered the room with the key card and had sexual intercourse with H.S. Troutman left the room and went to one of his teammates, Rennard Reynolds, passed him the key card and said that he just had sex with a girl in that room and that Reynolds could probably "get laid" too. Further investigation showed that there were a total of four entries into the room where H.S. stayed that night.

The next morning, H.S. awoke and had a vague sense that she had sex the previous night. She had trouble remembering the encounter and was very confused as to what had happened. In fact, one of the coaches, who was a friend of H.S., testified at trial that H.S. called him the morning after the encounter and told him that she was confused and could not remember whether it was consensual or not. At some point, H.S. also realized that some of her belongings were missing, including her iPod, her iPod alarm, her camera, and $70 cash from her purse. Police were contacted and informed of the theft and a possible sexual assault.[1] After law enforcement arrived at the hotel, Troutman approached an officer and indicated that he had some information about the events that occurred the previous night. He admitted that he had sex with H.S., but insisted that it was purely consensual. As a result of the investigation by law enforcement, the state sought an indictment against Troutman for burglary and rape. The grand jury found probable cause only as to the rape charge. The case proceeded to trial. The state's theory was that H.S. was either unconscious at the time of the sexual intercourse, or unable to resist, due to her ingestion of alcohol and the Ambien pill. Troutman's defense was that the sex was purely consensual, the alleged victim was an active participant, and the fact that the alleged victim simply did not remember did not mean that the sex was rape. In support of his defense,

---

[1]     Ultimately, Reynolds was prosecuted for the thefts.

Troutman presented evidence that one of the side effects of Ambien is anterograde[2] amnesia, during which a person using the drug can appear wide awake and fully functional at times during the night, but have no recollection of the night's activities the following morning. A jury found Troutman guilty of rape pursuant to Idaho Code § 18-6101(5). Troutman appeals, arguing prosecutorial misconduct deprived him of his rights to due process and a fair trial.

## II.

## DISCUSSION

Troutman contends that during the opening, closing and rebuttal arguments the prosecutor misrepresented the evidence, offered inconsistent theories of the crime, distorted the defense, sought a conviction to protect or change societal norms, reduced the state's burden of proof, created sympathy for the victim and derision for him, and testified to facts not in evidence. Although no objection was made to these arguments at the time, Troutman argues that all of these instances, individually or in the aggregate, amounted to fundamental error that deprived him of his rights to due process and a fair trial.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. A fair trial is not necessarily a perfect trial. When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *Id.* Misconduct will be regarded as fundamental error when it "goes to the foundation or basis of a defendant's rights or . . . to the foundation of the case or take[s] from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Severson*, 147 Idaho 694, 716, 215 P.3d 414, 436 (2009); *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989) (quoting *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942)). "However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless." *Field*, 144 Idaho at 571, 165 P.3d at 285. Under the harmless error doctrine, a conviction will stand if the appellate court is convinced beyond a reasonable doubt that the same result would have been

_____

[2]      In the trial transcript, this appears as "intro grade," the court reporter having spelled it incorrectly.

3

reached by the jury had the prosecutorial misconduct not occurred. *State v. LaMere*, 103 Idaho 839, 844, 655 P.2d 46, 51 (1982); *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct. App. 1998).

The role of the prosecutor is to present the government's case earnestly and vigorously, using every legitimate means to bring about a conviction, but also to see that justice is done and that every criminal defendant is accorded a fair trail. *State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994); *State v. Givens*, 28 Idaho 253, 268, 152 P. 1054, 1058 (1915); *State v. Reynolds*, 120 Idaho 445, 449, 816 P.2d 1002, 1006 (Ct. App. 1991); *State v. Robinson*, 115 Idaho 800, 807, 770 P.2d 809, 816 (Ct. App. 1989); *State v. Danson*, 113 Idaho 746, 749, 747 P.2d 768, 771 (Ct. App. 1987). The desire for success should never induce a prosecutor to obtain a verdict by argument based upon anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same. *Givens*, 28 Idaho at 268, 152 P. at 1058. Appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are improper. *State v. Smith*, 117 Idaho 891, 898, 792 P.2d 916, 923 (1990); *State v. Phillips*, 144 Idaho 82, 87, 156 P.3d 583, 588 (Ct. App. 2007). Although we have recognized the imposition of certain well-accepted restrictions beyond which the prosecutor's argument may not go without running afoul of its function, the propriety of a given argument will depend largely on the facts of each case. *Reynolds*, 120 Idaho at 449-50, 816 P.2d at 1006-07; *see also Darden v. Wainwright*, 477 U.S. 168 (1986). The function of appellate review is not to discipline the prosecutor for misconduct, but to insure that any such misconduct did not interfere with the defendant's right to a fair trial. *Reynolds*, 120 Idaho at 451, 816 P.2d at 1008; *see also State v. Ruth*, 102 Idaho 638, 640-41, 637 P.2d 415, 417-18 (1981).

## A.    Mischaracterization of the Defense Theory

Troutman asserts that the prosecutor committed misconduct by distorting his defense that the victim was a conscious and fully active participant in the sexual encounter. During rebuttal closing argument, the state framed the defense as follows:

> I think it's set and he would have a done deal if, based on this argument, we are all going to have to put heavy locks on our doors, on the windows in our house and wear chastity belts when we go to bed, because in case you are lawfully ingesting any substance that makes you unable to fend for yourself and the next day you can't remember much about what's happened, but the law enforcement has done their absolute best and has figured out the criminal involved and the crime that's committed, you are at fault, and there is no crime.

4

Under this suggestion, if your house door is unlocked and a person walking by decides that they are going to check all the doors in the neighborhood in the middle of the night and see who's got something they can take, comes into your house, and you happen to have taken a sleeping pill, or whatever, or are just a really heavy sleeper and someone comes through your house, takes everything you have and goes, "Hey, buddy, I'm taking your car," and you don't wake up, and he leaves.

When he is caught later he is going to go, "I was in his house. It was unlocked. He didn't tell me I couldn't come in."

And then I said to him, "Dude, I'm taking your car, and he doesn't remember, and he did not follow the warnings on the Ambien he was taking that said don't mix it with alcohol, that's his fault."

When you start shifting the blame in a case like this onto the victim for her inability to remember every detail of what she was doing behind her locked door, in her own bedroom, in her own bed, then you are turning the world upside down. Justice not in its real sense, but what conceptual sense is.

. . . .

People who are victimized, you cannot blame them later that they may have a mental illness, maybe they have Alzheimer's. This means that those folks are open targets. They might not know what happens to them, because they can't remember tomorrow what happened.

In *State v. Beebe*, 145 Idaho 570, 574-76, 181 P.3d 496, 500-02 (Ct. App. 2007), this Court held misconduct occurred, necessitating a new trial where the prosecutor's statements grotesquely mischaracterized the defense. In that case, Beebe claimed he harbored no intent to frighten or use force against the store clerk while attempting a robbery, but instead his bizarre behavior was the product of his mental illness. The prosecutor suggested to the jury that this would be "opening the doors" to excusing criminal conduct and that Beebe was claiming he was "allowed to commit crimes" because he was mentally ill. *Id.*

The prosecutor in this case distorted Troutman's defense in a similar manner. Troutman maintained from the beginning that his sexual encounter with the victim was consensual, that she was awake and an active participant. Troutman argued below that her inability to remember having sex with him the next morning was due to her taking a sleeping pill after drinking, and her lack of memory did not mean that the sex was automatically rape. He presented expert testimony that the sleeping aid she used could cause such amnesia. By using the particular analogy that she did, the prosecutor gravely distorted and mischaracterized Troutman's defense. He did not ever present a defense that because the victim could not remember what happened there could be no crime, nor did he suggest that unconscious people should bear the "blame" if

5

they became victimized by criminals. The prosecutor's analogy to Alzheimer's patients further degraded the defense as opening the door to constant victimization of any mentally vulnerable person. Urgings, explicit or implied, for the jury to render a verdict based on factors other than the evidence admitted at trial and the law contained in the jury instructions have no place in closing arguments. *Beebe*, 145 Idaho at 576, 181 P.3d at 502. Furthermore, argument for a conviction in order to protect the public and the rights of victims are outside the boundaries of proper closing arguments. *Id.* The prosecutor's mischaracterization of Troutman's defense with resulting implication, *vis-à-vis* vulnerable citizens, constitutes fundamental error and cannot be considered harmless. Such argument appeals directly to the emotions and passions of the jury. It is also important to note that this misconduct by the prosecutor occurred in rebuttal argument. At this point in the trial, the state has the last word and is in a position to leave the last impression upon the jury. From an evidentiary standpoint, this case was not an open and shut case for the state, and Troutman presented a viable defense. Therefore, we cannot conclude beyond a reasonable doubt that the result of the trial would not have been different absent the distortion and mischaracterization of Troutman's defense. Consequently, we find that this issue is dispositive and a new trial is warranted.

In the interest of providing guidance upon remand, we discuss some of the remaining issues in summary fashion, keeping in mind that the propriety of a given argument will depend largely on the facts of each case.

**B.      Guidance on Other Misconduct Issues**

**1.      Burden of proof**

Referring to the same portion of rebuttal argument referenced above, Troutman asserts that the prosecutor reduced the state's burden of proof by stating:

> I think it's set and he would have a done deal if, based on this argument, we are all going to have to put heavy locks on our doors, on the windows in our house and wear chastity belts when we go to bed, because in case you are lawfully ingesting any substance that makes you unable to fend for yourself and the next day you can't remember much about what's happened, *but the law enforcement has done their absolute best and has figured out the criminal involved and the crime that's committed*, you are at fault, and there is no crime.

(Emphasis added). A closing argument may not misrepresent the law or the reasonable doubt burden. *State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *State v. Lovelass*, 133 Idaho 160, 168, 983 P.2d 233, 241 (Ct. App. 1999);

*State v. Missamore*, 114 Idaho 879, 882, 761 P.2d 1231, 1234 (Ct. App. 1988). Official suspicion, indictment, or continued custody are not grounds for a conviction. *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978).

Troutman asserts that the prosecutor was basically arguing that because law enforcement officers did their best and identified him, the state could charge Troutman with the crime and the jury should convict him, regardless of his possible defenses. Read in isolation, the prosecutor's reference to law enforcement's role in ferreting out crime does not implicate the reasonable doubt burden of proof assigned to the state. To the extent that this argument is intertwined with the mischaracterization of the theory of defense presented by Troutman, it is improper.

### 2. Evoking sympathy for the victim and derision against Troutman

Troutman also contends that the prosecutor committed misconduct by evoking sympathy for the victim and derision against him from the jury. Extraneous comments whose only purpose is to encourage the jury to identify with the victim are not proper. *Severson*, 147 Idaho 694, 215 P.3d 414.

During opening statements, the prosecutor touched on the victim's rape exam. The prosecutor stated, "She is going through the rape kit and the rape exam and suffering for five hours of that on her own without really knowing what all is going on and not having an answer to anything." We agree that this statement, which referred to facts that were irrelevant to Troutman's guilt or innocence, had the effect of evoking sympathy for H.S. and encouraging the jury, at the outset of trial, to identify with the victim's suffering and therefore, was improper.

During closing argument, the prosecutor referred to the victim as "a human being, not just some random person that you meet." The prosecutor further stated, "This is a real person who was here in the state of Idaho who was visiting for the first time in her life. She came here to have a very nice time and, of course, ended up having a very, very traumatic situation happen to her." The victim was also referred to once as "the poor woman." In making these statements, Troutman contends that the prosecutor attempted to evoke sympathy for the victim. While these statements may have engendered some degree of good will for the victim with the jury, they were not inflammatory, were based upon the state's evidence that H.S. had been raped, and therefore were not improper.

Troutman further asserts the prosecutor's descriptions of him elicited derision from the jury. During closing argument, the prosecutor explained how Troutman's DNA was found on

the victim. She stated, "He did not wear a condom. He did not care enough to protect who he is going to have sex with." The prosecutor continued, "The only semen on this woman is from that guy. She has to take protective measures later to make sure she doesn't get pregnant by him or she doesn't get all the things that come along with unprotected sex she doesn't know about. She doesn't know who he is."

While Troutman admitted to officers that he did not wear a condom when he had sex with the victim, the prosecutor's arguments related to that fact were improper because they were not relevant to the issue of consent, the only disputed issue in the case. In presenting this argument, the prosecutor encouraged the jury to infer that Troutman is a rapist because he did not care enough to protect the person he was having sex with, and also to get the jury to focus on the consequences of unprotected sex such as pregnancy and sexually transmitted diseases. The fact that Troutman did not wear a condom during sex is irrelevant to the consent question before the jury.

### 3. Misrepresentation of the evidence

Troutman contends that the prosecutor intentionally attempted to inflame the passions and prejudices of the jury in order to obtain a conviction based on uncharged crimes. In describing the timeline of events, the prosecutor stated:

> At 4:53 a.m. we know that room has been entered a second time. I don't have to prove if there was a rape or theft there, because the victim is unconscious. She is unaware these multiple entries are happening. She doesn't know who is coming into the room, to tell us again at 5:09 a.m., sixteen minutes later, the room is entered again.
>
> The same key card the defendant had in his possession. That key card never went back to [J.R.] and was never placed back into the room, so he had it, and he says he handed it off to a third party unknown to the victim. Okay?
>
> So either he or someone that he designated, by passing it along, is going into that room again. And that happens, a second entry happens. Again, don't know if there is rape or theft happening again.
>
> 029CD again is used one hour later. There is a fourth entry. Again, do not know what other crimes were committed against this woman during that time frame. We do know at some point the iPOD was taken from the room. Her other luggage was searched. The wires that go with it are taken out of the room as well, and again, I don't know -- that's a side issue. I don't know if Mr. Troutman did that beyond a reasonable doubt or if his buddy that he passed the card to did that, but I do know that Mr. Troutman returned it all to the front desk when he knew the police was [sic] on them, and he would be getting caught.
>
> All of that, mere inability to know who's in there, how many times he is coming in, she is not aroused. She is not awakened. She does not know, and she

8

does not even realize a theft has happened, because she is that unaware and sedated and unconscious and helpless.

And their repetitive entering into the room obviously speaks squarely to the point of her ability to be able to appreciate the nature of the act, which is the penetration in this case.

It is plainly improper for a party to present closing argument that misrepresents or mischaracterizes the evidence. *Beebe*, 145 Idaho at 575, 181 P.3d at 501; *see also Raudebaugh*, 124 Idaho at 769, 864 P.2d at 607; *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *State v. Tupis*, 112 Idaho 767, 771-72, 735 P.2d 1078, 1082-83 (Ct. App. 1987). The courts do not look with favor upon the action of prosecutors in going beyond any possible state of facts which can be material as to the guilt or innocence of the defendant in a particular case for which he is on trial. *State v. Irwin*, 9 Idaho 35, 44, 71 P. 608, 611 (1903).

Troutman asserts that the prosecutor's remarks imply that he committed other crimes and bad acts against the victim, even though the prosecutor knew that Reynolds had stolen the iPod equipment and cables, not Troutman. Testimony during the trial revealed that after having sex with the victim, Troutman handed the key card to Reynolds, and invited him to enter the room to "get laid." When Troutman learned of the thefts from the victim the following morning, he immediately went to Reynolds' room, and recovered the stolen property from Reynolds' bag in order to turn it in to the front desk. Troutman also returned the victim's camera to the front desk, which he told another player he'd gotten from "some girl" the night before. The prosecutor misstated the evidence when she told the jury she did not know when certain items were taken or by whom, because in doing so she invited speculation that Troutman stole items for which Reynolds had already been prosecuted. Moreover, the prosecutor's statements created room for speculation as to what else may have happened in the room during the subsequent entries, including the possibility that H.S. may have been raped again. These statements were improper because these statements invited the jury to find guilt based on factors outside of evidence.

Troutman asserts that the prosecutor improperly testified to facts not in evidence, thereby ridiculing his credibility. No person may testify in court unless first placed under oath. I.R.E. 603; *State v. Gerardo*, 147 Idaho 22, 26, 205 P.3d 671, 675 (Ct. App. 2009). It is also improper for the prosecution to express a personal belief as to the credibility of witnesses, unless the comment is based solely on inferences from evidence presented at trial. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *State v. Porter*, 130 Idaho 772, 786, 948 P.2d 127, 141

(1997). However, counsel may make remarks, not based on the record, which concern matters of general knowledge or experience. *Reynolds*, 120 Idaho at 450, 816 P.2d at 1007.

While discussing how Troutman gave the victim's key card to Reynolds, she reiterated the defendant's thinking:

> [T]he legitimate reason he gives, "I thought she was up for having sex with multiple members of the team."
> He did not tell you why he thinks that about this woman. Even women who -- and I am yet to hear from a single woman who has done that -- this is anecdotal from him -- that there are women who have sex with multiple members at one time, willingly have sex with multiple members at one time, and they are conscious and aware of what they are doing and what they are getting themselves into. That's his answer for why he would subject this woman to yet another stranger to go into her room.

While these comments may reflect the prosecutor's knowledge and experience as matters of general standards of decency in her opinion, it was improper for the prosecutor to offer the jury that she had yet to hear from a single woman who would want to have sex with multiple team members at the same time. It was improper for the prosecutor to offer her personal experience as evidence to directly challenge Troutman's credibility.

**III.**

**CONCLUSION**

We conclude that the statements made by the prosecutor during rebuttal closing argument mischaracterized Troutman's defense and therefore were improper. This misconduct amounted to fundamental error as it deprived Troutman of his rights to due process and a fair trial. Accordingly, Troutman's judgment of conviction for rape is vacated. The case is remanded for a new trial with guidance provided on the propriety of some of the other prosecutorial misconduct issues raised.

Chief Judge LANSING **CONCURS**.

Judge GRATTON **CONCURS WITH THE MAJORITY ONLY WITH RESPECT TO THE RESULT IN SECTION II A**.