**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47400**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: April 13, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| STEVEN MOSES JAY, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Judgment of conviction and sentences for felony domestic battery and for misdemeanor resisting and/or obstructing an officer, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Steven Moses Jay appeals from his judgment of conviction and sentences for felony domestic battery, Idaho Code §§ 18-903, 18-918(2)(a), and for misdemeanor resisting and/or obstructing an officer, I.C. § 18-705. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Late one evening in December 2018, law enforcement responded to a domestic violence incident in Twin Falls. After the purported incident, the victim went to a friend's house and the friend called the police. When Officers Cyr and Weigt arrived at the friend's house, they both observed the victim had a swollen nose and cheek. The victim told Officer Cyr that her

1

boyfriend, Jay, had pushed her down, struck her in the face twice, and then pushed her down again. The victim was transported to the hospital.

Meanwhile, Officers Rhoades and Weigt went to Jay's residence. Jay appeared intoxicated, and when the officers arrested him, he resisted by pulling his hand away and trying to retreat into his residence.

The State charged Jay with felony domestic battery and misdemeanor resisting arrest. Jay pled not guilty and proceeded to trial. At trial, the State admitted evidence about the victim's injuries, including the testimony of the emergency room personnel who treated the victim. The nurse who examined the victim testified that the victim's injuries were consistent with being "hit multiple times in the face." Further, the nurse testified that the victim's nose was swollen and had an abrasion; her right brow, left cheek, and left wrist were bruised; and she had multiple scratches on her neck and wrist. Further, the emergency room doctor testified that a CAT scan showed the victim's nasal bones "had been broken into several different pieces." The State admitted in evidence numerous photographs of the victim's injuries.

The State also introduced testimony about the victim's numerous statements that Jay caused her injuries. Officer Cyr testified that the victim initially reported Jay had pushed her down, "struck her in the face twice," and then pushed her down again; she gave Officer Cyr "the exact same story" when he spoke to her later at the hospital; and she told him "the exact same thing" again when he met with her approximately twelve hours later. Similarly, the nurse testified that the victim reported her injuries occurred during an altercation with her boyfriend when he hit her multiple times in the face with his fist. Likewise, the doctor testified the victim reported that "she had been involved in an altercation with her boyfriend" and "she'd been punched in the face with a closed fist three or four times." Finally, the victim provided the same account in a written statement prepared at the hospital.

During the prosecutor's direct examination of the victim, however, she testified she did not remember either reporting that Jay caused her injuries or most of the other events that occurred on the night she was injured. For example, the victim testified that she did not remember getting into an argument with Jay, telling the police Jay pushed her down and caused her bruising, meeting with Officer Cyr at a friend's house or again later at the hospital, providing a written statement at the hospital, how much the victim drank that night, or the injuries she suffered. Explaining her lack of memory, the victim testified she was "highly intoxicated" and

2

"under the influence of drugs and pain killers" when she made the statements incriminating Jay. In contrast, Officer Cyr, Officer Weigt, the nurse, and the doctor all testified that the victim did not appear to be intoxicated on the night of the incident.

On cross-examination, the victim continued to recant her prior statements that Jay caused her injuries, explaining those statements were untrue because she was "intoxicated" and not "thinking clear-headed." Explaining her injuries, the victim testified that she sustained them when she was getting into her car on the night of the incident and slipped: "I park on a slope in our driveway, and I slipped on some ice that was under the snow." Further, she testified that she had "held [the] position" that "Jay did not strike [her] in the face" "[e]ver since [she] quit taking the painkillers, because they were making [her] confused."

Ultimately, the jury found Jay guilty of both domestic battery and resisting arrest. Thereafter, the district court sentenced Jay to one year determinate for resisting arrest and to a unified sentence of eight years with three years determinate for felony domestic battery. Jay timely appeals his conviction and his sentence for domestic battery.

## II.

## ANALYSIS

### A.    Denial of Motion for Mistrial

Jay asserts the district court erred by denying his motion for a mistrial after the prosecutor attempted to introduce evidence of conduct subject to Idaho Rule of Evidence 404(b). In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared on the defendant's motion when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well-established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

3

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

In this case, the prosecutor's inquiry into whether the victim told the police that Jay had previously threatened her prompted Jay's motion for a mistrial. On cross-examination, Jay's counsel asked the victim whether she feared Jay: "[D]o you fear [Jay], as he--who's seated beside me? Do you have a fear of him?" The victim responded: "He's no threat to me. Never has been." On re-direct examination, the prosecutor further inquired about whether Jay had been a threat to the victim:

Q. You testified [Jay] has never--your words--never been a threat to you?
A. He's never been a threat to me.
Q. That's not true, is it? You're scared of him.
A. No, I'm not.
Q. You told the officers you were scared of him.
A. At the time, I thought I was.
Q. . . . So you remember, at the time, being scared of him?
A. I thought I was, yes.
Q. . . . So on the night in question, you were actually scared of him?
A. Yes.
. . . .
Q. You claim he has never been a threat to you twice now, and yet that night you told the officers that this wasn't the first time was it?
A. It's never happened. It's never happened.
Q. You told the officers that this was, what? The third or fourth time?

Before the victim responded to this latter question, Jay's counsel objected and moved for a mistrial outside the jury's presence, arguing the State was attempting to introduce "extraordinarily prejudicial" Rule 404(b) evidence. In response, the prosecutor argued Jay's counsel "opened that door" when he inquired about whether the victim feared Jay.

Before ruling on the mistrial motion, the district court took a break, "listened to the record," and "reviewed the realtime [sic] transcription." Thereafter, the court denied the motion, ruling that "the door was clearly opened by [Jay's counsel's] question and the witness's response"; her response "was entirely predictable based on the question asked"; and the prosecutor's question was not "an impermissible 404(b) question" and was not prejudicial. Nevertheless, the court sustained Jay's objection, did not allow the victim to answer the prosecutor's question, and instructed the jury to disregard the question and not to speculate about the victim's potential answer.

On appeal, Jay argues "the district court's refusal to declare a mistrial after the prosecutor brought up the prohibited [Rule] 404(b) bad acts of [Jay] constituted reversible error." In

4

support of this argument, however, Jay does not rely on Rule 404(b), but rather he relies on Rule 613, which provides for extrinsic evidence of a witness's prior inconsistent statements. Specifically, Jay argues the court erred by denying Jay's motion for a mistrial because the prosecutor "told the jury [about] Jay's alleged bad acts under the guise of impeaching [the victim] under [Rule] 613" and the impeachment "was not proper" because the victim "had already admitted her trial testimony was inconsistent with what she told the officers on the night of the incident."

In support of this latter argument, Jay relies on *State v. Koch*, 157 Idaho 89, 103-04, 334 P.3d 280, 294-95 (2014), which addressed whether the district court erred by allowing a prior inconsistent statement for impeachment purposes. In *Koch*, the Idaho Supreme Court declined to adopt a rigid definition of inconsistency for purposes of Rule 613. *Id.* at 104, 334 P.3d at 295. Rather, the Court quoted the rule in a majority of jurisdictions which "allows the prior statement whenever a reasonable man could infer on comparing the whole effect of the two statements that they had been produced by inconsistent beliefs." *Id.*

Jay's argument fails for numerous reasons. First, Jay did not raise Rule 613 as a basis for his objection before the district court, and his objection under Rule 404(b) did not preserve the separate, distinct basis for excluding the evidence under Rule 613. *See, e.g.*, *State v. Hall*, 163 Idaho 744, 772-73, 419 P.3d 1042, 1070-71 (2018) (holding objection to admission of evidence on one basis does not preserve a separate and different basis for excluding evidence).

Second, even if Jay had objected under Rule 613, the question to which Jay objected was proper impeachment. Jay's counsel's question about whether the victim feared Jay and the victim's response that "he's no threat to me" "never has been" prompted the prosecutor's question about whether the victim had previously told the officers Jay was a threat. This question sought to impeach both the victim's earlier testimony that Jay was not a threat to her and also her testimony immediately preceding the question that "it's never happened. It's never happened." Third, the district court correctly concluded that the prosecutor's question was not "an impermissible 404(b) question." The question did not inquire whether Jay had previously threatened the victim but rather whether she had previously told the officers Jay had threatened her.

Finally, even if the district court's refusal to declare a mistrial constituted an error, any such error viewed retrospectively is not reversible error. *See Urquhart*, 105 Idaho at 95, 665

5

P.2d at 1105 ("The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error."). In particular, the court sustained Jay's objection, did not allow the victim to answer the prosecutor's question, and instructed the jury to disregard the question and not to speculate about the victim's potential answer. The jury is presumed to have followed these instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997) (noting jury is presumed to follow court's instructions). Further, any purported error is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error. *See State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) ("Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record."). Accordingly, we hold the district court did not err by denying Jay's motion for a mistrial.

**B.      Prosecutorial Misconduct During Closing Argument**

On appeal, Jay identifies three instances of alleged prosecutorial misconduct, all of which occurred during the prosecutor's closing argument. Closing argument serves to sharpen and clarify the issues for resolution by the jury in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id*. Both parties have traditionally been afforded considerable latitude in closing argument to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *Id.*

Although our system of criminal justice is adversarial in nature and the prosecutor is expected to be diligent and to leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). In reviewing allegations of prosecutorial misconduct, however, we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

**1.      Urging conviction for protection of the community**

On appeal, Jay argues the prosecutor committed misconduct by arguing the jury needed to convict Jay to "ensure community safety." Specifically, the prosecutor argued:

> Ladies and gentlemen of the jury, protect that woman. Protect [the victim]. Protect the community against a domestic violence abuser like [Jay], and find him guilty for his actions. Hold him accountable, and don't let him get away with this.

Jay asserts that "it was misconduct for the prosecutor to place the duty to protect [the] victim and the community in the hands of the jury."

Urging the jury to convict based on factors other than the evidence admitted at trial and the law as instructed is improper, including comments about protecting the public. *State v. Beebe*, 145 Idaho 570, 576, 181 P.3d 496, 502 (Ct. App. 2007) ("Urgings, explicit or implied, for the jury to render a verdict based on factors other than the evidence admitted at trial and the law contained in the jury instructions have no place in closing arguments."). We decline, however, to consider Jay's challenge to the prosecutor's argument that the jury should convict Jay to "protect the community" for two reasons. First, Jay did not object to this statement at trial. As a result, any alleged prosecutorial misconduct only requires reversal if the error is fundamental error. Jay, however, does not argue on appeal that the error rises to the level of a fundamental error. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Second, Jay did not list this alleged error as an issue on appeal. Generally, the failure of an appellant to include an issue in the statement of issues required by Idaho Appellate Rule 35(a)(4) will eliminate consideration of the issue from appeal. *State v. Crowe*, 131 Idaho 109, 111, 952 P.2d 1245, 1247 (1998).

### 2. Disparaging and distorting the defense's case theory

Jay also challenges the prosecutor's comments during rebuttal closing argument theorizing why Jay's counsel did not present any closing argument about the resisting arrest charge:

> I told you [during closing argument that] the defense wasn't going to stand up and argue the resisting arrest [charge]. Not one argument about it. Why? If you look at your preliminary instructions--look at this. I want to bring this up to you because it's a strategic ploy by the defense, and I want you to reject it.
> Instructions Number 1 and 2 state the charges and which charges I brought, and it says [Jay] has pleaded not guilty to both. Interesting.
> The defense wants you to sit in that room and stew over the felony domestic violence and say, "You know what? This is ugly. I don't know, dealing with domestic violence is scary and gross. Let's split the baby and give the State the resisting." That's why.

Jay objected to these comments at trial as improperly "speculating as to legal strategy." The district court overruled this objection, and thereafter the prosecutor continued stating: "They want you to split the baby King Solomon style. Don't. Don't. Jay could have pleaded guilty to it, but he didn't."

7

When a defendant has made a contemporaneous objection to alleged prosecutorial misconduct, we first determine factually if prosecutorial misconduct occurred and, if so, whether the error was harmless. *Field*, 144 Idaho at 571, 165 P.3d at 285; *Phillips*, 144 Idaho at 88, 156 P.3d at 589. Where a defendant shows a reversible error based on a contemporaneously objected-to constitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict. *State v. Johnson*, 163 Idaho 412, 421, 414 P.3d 234, 243 (2018). A conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial. *State v. Baker*, 161 Idaho 289, 299, 385 P.3d 467, 477 (Ct. App. 2016).

On appeal, Jay asserts the prosecution argued that "defense counsel was modeling [his] defense of [Jay] on a Biblical story"; "no evidence supported the prosecutor's obloquy"; and "the prosecutor's comments misrepresent[ed] and disparage[ed] the defense's theory of the case." In support, Jay relies on *State v. Page*, 135 Idaho 214, 223, 16 P.3d 890, 899 (2000), quoting the Idaho Supreme Court's ruling in that case that "it is misconduct for a prosecutor to disparage a defense attorney in closing argument." Jay's reliance on *Page* fails for two reasons. First, Jay did not object on the basis that the prosecutor was disparaging defense counsel. *See Hall*, 163 Idaho at 772-73, 419 P.3d at 1070-71 (holding objection to admission of evidence on one basis does not preserve a separate and different basis for excluding evidence). Second, we do not read the prosecutor's comments as disparaging Jay's counsel personally.

Jay's reliance on *State v. Troutman*, 148 Idaho 904, 231 P.3d 549 (Ct. App. 2010), is also misplaced. In that case, Troutman asserted the prosecutor distorted his defense theory that "the victim was a conscious and fully active participant in the sexual encounter," for which Troutman was on trial. *Id.* at 908, 231 P.3d at 553. This Court explained the prosecutor's description of this defense as asserting that "because the victim could not remember what happened there could be no crime" and that "unconscious people should bear the 'blame' if they became victimized by criminals." It noted that prosecutorial misconduct occurs when "the prosecutor's statements grotesquely mischaracterize[] the defense," and it ruled "the prosecutor gravely distorted and mischaracterized Troutman's defense." *Id.* at 909, 231 P.3d at 554.

In this case, Jay offers no explanation how the prosecutor allegedly disparaged his defense. Jay's only defense at trial was the victim was not credible when she initially reported

that Jay caused her injuries. The prosecutor's comments about Jay's legal strategy, however, did not address this defense but rather attempted to explain Jay's failure to make any closing argument regarding the resisting arrest charge. Unlike the prosecutor's conduct in *Troutman*, this explanation about Jay's legal strategy was not a gross mischaracterization of his defense and was, as the district court ruled, not improper argument. Accordingly, the prosecutor's explanation for Jay's failure to address the resisting arrest charge during his closing argument does not constitute prosecutorial misconduct.

### 3. Prosecutor's comments about other domestic violence cases

Finally, Jay challenges the prosecutor's comments about whether a domestic violence victim's recantation of earlier accusations is unusual. During closing argument, Jay's counsel argued that it was "highly unusual" for both the defendant and the victim to deny at trial that domestic violence occurred. The prosecutor took issue with this statement during his rebuttal argument:

> [Jay's counsel] says it's unusual that they both testified it did not happen. That's not unusual. Come down to the courthouse any time you want and watch domestic violence cases and see how often a domestic violence victim takes the stand and looks at the man who she has to live with and will probably live with after and stares them in the eye and says, "Yeah, that's the man who beat me." You come down and count how many of these victims you see.
> No, it's not unusual for a victim to take that stand and deny everything that happened and say that she just loves her spouse so much that she accidentally tripped and hit her face on a countertop. Every Friday, down the hall.

Jay did not object at trial to these comments. Nonetheless, he challenges the comments on appeal as prosecutorial misconduct.

Where prosecutorial misconduct was not objected to during trial, this Court may only reverse when the misconduct constitutes fundamental error. *State v. Miller*, 165 Idaho 115, 122, 443 P.3d 129, 136 (2019). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. *Id.* at 119, 443 P.3d at 133. First, the defendant must show one or more of the defendant's unwaived constitutional rights were violated. Second, the error must be clear and obvious, which means the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision by not objecting. *Id.* Third, the defendant must demonstrate the error affected the defendant's substantial rights, meaning the error identified in the first and second prongs of the test actually affected the outcome of the trial proceedings. *Id.* at 119-20, 443 P.3d at 133-34.

9

On appeal, Jay argues the prosecutor's comments about evidence not in the record, i.e., the prosecutor's "own opinion on domestic violence cases," constituted fundamental error. In support, Jay asserts: (1) these comments violated his Fourth Amendment right to a fair trial; (2) the error was clear because there is "no reason to believe [Jay's] counsel was 'sandbagging' the district court" and because "no legitimate strategic or tactical reason" supported a decision not to object to the comments undermining the defense's theory of the case and the testimony the defense elicited from victim; (3) the misconduct affected the trial's outcome because the evidence against Jay was "tenuous" and the case turned on a "credibility determination."

Assuming the prosecutor improperly commented about what occurs in other domestic violence cases, those comments did not rise to the level of fundamental error. In particular, Jay has failed to establish the second and third elements of the fundamental error analysis. This Court recently addressed the proof necessary to satisfy the second element of this analysis in *State v. Saenz*, 167 Idaho 443, 470 P.3d 1252 (Ct. App. 2020). In that case, Saenz did not object to the prosecutor's comments during closing argument that the prosecutor "listened to 'hours of interviews' and 'read all the police reports and watched all the videos'" and that "these documents contained no corroboration of Saenz's theory." *Id.* at 450, 470 P.3d at 1259. The prosecutor made this argument despite that no police reports had been admitted into evidence nor had certain portions of the interviews and videos. *Id.* On appeal, Saenz argued these comments about evidence not in the record constituted fundamental error.

This Court rejected Saenz's argument, noting it strongly presumes defense counsel was competent and his "trial tactics were based on sound legal strategy." *Id.* at 449, 470 P.3d at 1258. The Court ruled that, to overcome this "strong presumption" of competence, a defendant must identify evidence in the record affirmatively establishing that the lack of an objection was not strategic or tactical. *Id.* at 450, 470 P.3d at 1259. Further, the Court ruled that "the defendant's opinion that the absence of an objection was not tactical is not enough to overcome the presumption of competence." *Id.* at 449, 470 P.3d at 1258.

In this case, Jay offers only his opinion that his counsel was "not sandbagging" by not objecting and that "no legitimate strategic or tactical reason" supported a decision not to object because the comments undermined the defense's theory and the victim's testimony. These opinions, however, are inadequate to overcome the strong presumption that defense counsel strategically decided not to object. *See id.* at 449, 470 P.3d at 1258 (ruling defendant's opinion

10

inadequate to establish lack of objection was not strategic or tactical). Moreover, Jay's counsel did object at least once during the prosecutor's rebuttal closing argument. *See id.* at 450, 470 P.3d at 1259 (noting trial counsel's objection to some statement during closing and ruling "we cannot say the record clearly establishe[d] that trial counsel's silence in other instances was not strategic"). Accordingly, Jay failed to establish the second element of the fundamental error analysis.

Jay also fails to establish the third element that the misconduct actually affected the trial's outcome. "Courts have consistently held prosecutorial misconduct during closing arguments will rise to the level of fundamental error only if the misconduct was so egregious or inflammatory that any ensuing prejudice could not have been remedied by a curative jury instruction informing the jury to disregard the comments." *Id.* at 451, 470 P.3d at 1260. Although prosecutorial misconduct may have an increased impact during rebuttal closing argument, just because prosecutorial misconduct occurs during rebuttal does not mean it actually affected the trial's outcome. *Id.* Proper jury instructions may cure prosecutorial misconduct even if it had the potential to impact the case's core issue. *Id.*

In this case, the district court twice instructed the jury that the lawyers' arguments and statements, including their opening and closing arguments, were not evidence and also that the jury must decide the facts based on the evidence presented in the case. These instructions cured any potential effect the prosecutor's comments may have had on the jury. Furthermore, we disagree with Jay's argument that the prosecutor's comments actually impacted the trial's outcome because "the State's evidence against [Jay] was tenuous." To the contrary, the State presented the testimony of at least three witnesses who testified the victim told each of them Jay had caused her injuries and also admitted in evidence photographs of those injuries. We also disagree with Jay's assertion that the case turned solely on a "credibility determination." While the witnesses' credibility was at issue, the jury also likely considered whether the nature of the victim's injuries--as shown in the photographs and described by numerous witnesses--were the type that could have been sustained by slipping on ice. Accordingly, Jay failed to establish the third element of the fundamental error analysis, and we hold that the prosecutor's comment about other domestic abuse cases was not fundamental error requiring a reversal.

11

## C. Excessive Sentence

Finally, Jay argues the district court imposed an excessive sentence by sentencing him to a unified sentence of eight years with three years determinate for felony domestic battery. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Jay argues the district court abused its discretion by not properly balancing the mitigating and aggravating factors in this case. In support, Jay identifies several mitigating factors he contends warrant a lesser sentence, including a recent loss in his family; his increased alcohol consumption and suicidal thoughts; his major depression, anxiety, and bipolar disorders; and his work history. Further, Jay notes this offense is his first felony conviction.

Having reviewed the record in this case, we conclude the district court did not abuse its discretion in sentencing Jay. The court properly considered the correct legal standards including the protection of society, deterrence, rehabilitation, and retribution. It found the sentence was necessary after considering the presentence investigation report, the domestic violence assessment, Jay's refusal to take any responsibility for his actions or to show any remorse, and his continued adherence "to a false narrative as to what happened."

While the mitigating factors Jay identified may have some relevancy to sentencing, the court was not required to assess or to balance all of the sentencing goals in an equal manner. *See*

*State v. Felder*, 150 Idaho 269, 276, 245 P.3d 1021, 1028 (Ct. App. 2010) (noting equal balancing of goals not required). That the court did not elevate the mitigating factors over the need to protect society does not establish an abuse of discretion. *See id.* (noting elevation of societal protection over mitigating factors not an abuse of discretion). Accordingly, we hold the court did not abuse its discretion in sentencing Jay.

## III.

## CONCLUSION

The district court did not err in denying Jay's motion for a mistrial. Further, the prosecutor's comments during closing argument do not require reversal. Finally, the court did not abuse its sentencing discretion in sentencing Jay. Accordingly, we affirm Jay's judgment of conviction and sentences.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.