# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48174

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, January 2022 Term** |
| | ) | |
| **v.** | ) | **Opinion filed: April 28, 2022** |
| | ) | |
| **DARREN CARLTON TEMPLE,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Davis VanderVelde, District Judge.

The decision of the district court is affirmed.

Nevin, Benjamin & McKay, LLP, Boise, for Appellant. Dennis A. Benjamin argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Justin R. Porter argued.

---

ZAHN, Justice.

This case concerns whether a district court abused its discretion in quashing a subpoena seeking attorney billing records in a pending divorce proceeding and whether the district court erred in refusing to instruct the jury on the legal duty to report allegations of child abuse. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 20, 2018, Customs and Border Protection ("CBP") officers arrested Darren Temple in California as he crossed the border from Mexico into the United States. Temple had been in Mexico for legitimate business purposes, but CBP officers received a positive alert for his name from the National Crime Information Center indicating that Temple was wanted in Idaho on an outstanding warrant for lewd and lascivious conduct with a minor.

Prior to his arrest, Temple had filed for a divorce from Jennifer Temple in March 2018. Then, in May 2018, Jennifer's daughter, J.P., filed a report with the Canyon County Sheriff's

1

Office alleging that Temple, her then stepfather, had sexually abused her by "fondl[ing] her breasts on multiple occasions and penetrat[ing] her vagina with his fingers" between October and November 2014, when she was fifteen years old. Though J.P. did not report the sexual abuse to law enforcement for some time, she testified that she had told her best friend, her boyfriend, and her mother, Jennifer, immediately following the last incident of sexual abuse in late November 2014. Jennifer never reported the sexual abuse to law enforcement. However, after encouragement from her therapist, J.P. eventually reported the incident to law enforcement in May 2018.

Following J.P.'s report, a detective with the Canyon County Sheriff's Office prompted her to call Temple to gather more evidence ("the confrontation call"). J.P. agreed to call Temple and confront him with her allegations, while law enforcement secretly recorded the call. During the call, Temple made multiple incriminating statements, including: "It started out and went further than it should have"; "I never tried to force anything, I always tried to be gentle"; "I did not mean to take advantage. I'm sorry. I truly am."; and referencing the incident as the "biggest regret of my life." Temple also made several statements claiming that his conduct appealed to both his and J.P.'s sexual desires, such as "I watched your fricking nipples get hard more than once" and "I thought part of you really liked it[.]"

On September 18, 2018, the State charged Temple with one count of lewd conduct with a minor under sixteen pursuant to Idaho Code section 18-1508, alleging Temple had manual-genital contact with J.P., and one count of sexual abuse of a child under sixteen pursuant to Idaho Code section 18-1506, alleging Temple manually touched J.P.'s breasts. After a warrant was issued for Temple's arrest, he was apprehended in California two days later as he entered the United States from Mexico and subsequently returned to Canyon County.

Under the case caption and case number of his criminal case, Temple served Jennifer's divorce attorney with a subpoena duces tecum seeking "any and all documents related to the billing and payment records related to the representation of Jennifer Temple, to include, but not limited to the number of hours worked and the number of hours charged." Jennifer's attorney moved to quash the subpoena, arguing the requested records contained attorney-client privileged information and attorney work product. Temple did not respond to the motion to quash his subpoena.

The district court heard oral argument on the motion to quash. At the hearing, Temple clarified that he sought only "the amount of money that [Jennifer] has invested in this divorce,"

2

ostensibly to demonstrate that Jennifer had "a significant interest in seeing [Temple] go to prison." The district court granted the motion to quash, concluding the information sought was irrelevant and, alternatively, covered by the attorney-client privilege.

Temple subsequently filed a motion to reconsider the district court's ruling granting the motion to quash, arguing that the records he sought were not privileged. Following a hearing, the district court issued an oral ruling denying the motion. The district court reiterated its conclusion that the information sought by the subpoena constituted attorney-client privileged communications and were otherwise irrelevant to the case. The district court thereafter issued a written order quashing Temple's subpoena.

At trial, the State called two witnesses—Wendy Barth and Dr. Edwin Hutchinson—who testified that Temple had disclosed his abuse of J.P. to them during counseling sessions. Barth testified that, during a marriage counseling session, Temple disclosed to her "that there was an incident in which he had touched Jennifer's daughter in a sexually inappropriate way." She also testified that she reported this information to Child Protective Services at the Idaho Department of Health and Welfare. Similarly, Hutchinson testified that, during a counseling session, Temple "confessed . . . that he had molested his daughter." He also stated that he reported Temple's disclosure to the Department of Health and Welfare in either 2014 or 2015. However, Hutchinson also testified that he had destroyed all his patient records following his retirement, including records of his sessions with Temple.

Prior to trial, Temple filed his proposed jury instructions with the district court, including an instruction on the statutory duty to report child abuse set out in Idaho Code section 16-1605. The district court declined to deliver the instruction, reasoning that the instruction was not "pertinent to th[e] case, given that it's not the doctors [sic] that are being charged in this matter."

Although the district court did not instruct the jury on the statutory duty to report child abuse, Temple's counsel cross-examined both Barth and Hutchinson on the subject. Counsel also questioned the detective who investigated J.P.'s sexual abuse allegations about whether the detective had seen a report from either Hutchinson or any other person regarding Temple's disclosures. The detective testified that although a Health and Welfare referral "triggers a law enforcement police report," he was unable to find any records of a report from Hutchinson or anyone else regarding Temple. Finally, Temple's counsel discussed the statutory duty to report allegations of child abuse in her closing argument.

3

The jury returned a guilty verdict on Count II, sexual abuse of a child, but did not come to a unanimous decision on Count I, lewd conduct with a minor under sixteen. Rather than seek a re-trial of Count I, the State moved to dismiss that charge. The district court granted the motion. Subsequently, the district court entered a judgment of conviction on the jury's verdict finding Temple guilty of sexual abuse of a child and sentenced Temple to ten years imprisonment, with three years fixed, but retained jurisdiction under Idaho Code section 19-2601(4). Temple timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court abuse its discretion in quashing Temple's subpoena for billing records from his then wife's divorce attorney?
2. Did the district court err in declining to instruct the jury on the statutory duty to report child abuse?

## III. STANDARD OF REVIEW

A trial court's decision to grant or deny a motion to quash is reviewed according to an abuse of discretion standard. *State v. Loera*, 167 Idaho 533, 536, 473 P.3d 802, 805 (2020) (citing *State v. Joy*, 155 Idaho 1, 12, 304 P.3d 276, 287 (2013)). Under that standard, this Court asks whether the court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id.* (quoting *State v. Le Veque*, 164 Idaho 110, 113, 426 P.3d 461, 464 (2018)).

"This Court reviews the trial court's jury instructions de novo to determine whether, when considered as a whole, they fairly and adequately present the issues and state the applicable law." *State v. Medina*, 165 Idaho 501, 507, 447 P.3d 949, 955 (2019) (internal quotation marks omitted) (citing *State v. Dunlap*, 155 Idaho 345, 364, 313 P.3d 1, 20 (2013)).

## IV. ANALYSIS

**A. Any error in the district court's order quashing Temple's subpoena was harmless.**

Temple argues that the district court abused its discretion in quashing his subpoena because the billing records from his ex-wife's divorce lawyer were relevant for impeachment purposes, the records were not privileged, and there was not sufficient evidence for the district court to conclude that the subpoena imposed an undue burden. The State contends that the billing records were irrelevant, subject to attorney-client privilege, and oppressive for other reasons. The State also

4

argues that Temple has not preserved his argument that the dates of certain billing records would be relevant to impeach J.P.'s testimony.

Assuming, without deciding the issue, that the district court erred in quashing Temple's subpoena, we hold that any error was harmless because the State has demonstrated beyond a reasonable doubt that the lack of attorney billing statements did not contribute to the verdict. That is to say, the probative value of the evidence against Temple outweighed the marginal probative value of the information sought by the subpoena.

1.  Temple has preserved his relevancy argument.

Temple argues that the information sought from subpoenaing Jennifer's divorce attorney is relevant because it could have been used to impeach J.P.'s testimony. He contends that the dates on the billing records *could* correspond with the date J.P. decided to report him to the police. If true, Temple suggests this *might* demonstrate that the report stemmed from Jennifer's efforts to obtain an upper hand in the divorce proceedings. The State argues that this issue has not been preserved on appeal because Temple did not argue this theory below. Rather, the State asserts that Temple limited his argument to whether the billing records would be relevant because they showed how much Jennifer spent on her divorce lawyer, impeaching her credibility as a witness in Temple's criminal trial.

To preserve an issue for appeal, both the issue and the party's position on the issue must have been raised before the trial court. *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). A party may augment his legal authority relating to his positions but may not "raise new substantive issues on appeal or adopt a new position on an issue that the trial court has not had the opportunity to rule on." *Id.* at 98, 439 P.3d at 1270. That is to say, "[t]his Court can hear refined legal arguments regarding an issue heard and decided by the court below, but in fairness to the district court and the opposing party, we cannot usurp the district court's role by deciding new legal issues in the first instance." *State v. Wilson*, 169 Idaho 342, __, 495 P.3d 1030, 1034 (2021) (quoting *Siercke v. Siercke*, 167 Idaho 709, 715, 476 P.3d 376, 382 (2020)).

Temple's initial subpoena was broad, seeking "any and all documents related to the billing and payment records related to the representation of Jennifer Temple, to include, but not limited to the number of hours worked and the number of hours charged." The request was broad enough to encompass billing records showing the hours Jennifer's attorney billed, the rate charged, and the dates on which those services were billed. At oral argument, Temple maintained those records

would be relevant to show that "[J.P.'s] allegation was made because of the entrust [sic] in the divorce and the financial component." Although the transcript reads "entrust," it is likely this is an error and the proper word is "interest." Thus, Temple's position before the district court included an argument that the records were relevant to call into question J.P.'s allegations because of Jennifer's interest in the divorce, of which her financial interest was but one component. In sum, the nub of Temple's relevancy argument was that J.P.'s allegations were a coordinated part of Jennifer's divorce litigation strategy.

That said, the State contends that Temple limited his request to only the amount of money Jennifer had spent on the divorce, and waived his ability to argue that the dates of the billed hours were relevant. The State's representation that Temple limited his request to only the billed amounts is not as clear-cut as it contends. The State points to language from the hearing on the motion to quash in which Temple's attorney stated:

> We're not asking for the content of what those billing records relate to beyond — essentially the point is the amount — bottom line is the amount of money that she has invested in this divorce and frankly why Ms. Temple has a significant interest in seeing my client go to prison.

However, the quoted language was a response to a district court question concerning whether the subpoenaed records were subject to the attorney-client privilege, not whether the information in those records would be relevant to Temple's defense. In other words, the State's waiver argument is disjointed as it suggests that Temple waived a *relevancy* argument by arguing that the records he sought were not subject to the attorney-client privilege. We are not persuaded by the State's argument and hold that Temple has preserved his relevancy argument.

2.  Any error in quashing Temple's subpoena was harmless.

We find no need to address the thorny attorney-client privilege issue raised by Temple's arguments as we conclude that even if the district court erred in quashing Temple's subpoena that error was harmless because the probative value of the evidence against Temple substantially outweighed the marginal probative value of the information sought by the subpoena.

Temple argues that the State cannot demonstrate that erroneously quashing his subpoena was harmless beyond a reasonable doubt. He contends that the billing records would have been critical to impeach both Jennifer's and J.P.'s testimony. Thus, he claims that the alleged errors prevented him from effectively impeaching the State's witnesses, which is not harmless error. The State contends that any error in quashing the subpoena was harmless because of the overwhelming

6

evidence of guilt against him and the low probative value of the evidence Temple sought. The State also argues that the billing records sought by the subpoena bore, at most, an attenuated connection to Temple's guilt, that Temple presented other evidence of Jennifer's interest in the divorce, and that the content of the billing records would likely have been excluded by a pretrial order that limited the admission of divorce-related evidence to certain subjects.

"A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017) (quoting *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010)). This Court applies a two-step test to determine if the State has carried its burden to demonstrate that an error is harmless beyond a reasonable doubt. *State v. Garcia*, 166 Idaho 661, 674–75, 462 P.3d 1125, 1138–39 (2020). First, we ask "what evidence the jury actually considered in reaching its verdict." *Id.* at 674, 462 P.3d at 1138 (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). Next, we "weigh the probative force of that evidence . . . against the probative force of the [error] standing alone." *Id.* (quoting *Yates*, 500 U.S. at 403) (second alteration in original). If application of this two-step test yields a result that the verdict would have been the same without the error, the error is harmless. *Id.* at 675, 462 P.3d at 1139. "[T]he proper showing for 'harmless error' is *not* 'overwhelming evidence' of the defendant's guilt." *Id.* at 674, 462 P.3d at 1138 (emphasis in original). "While a reviewing court might quantify the probative force of the record as a whole as 'overwhelming evidence' of guilt . . . the probative force of the error must be weighed as well." *Id.*

Even if the district court erred in quashing Temple's subpoena, we hold any error was harmless. First, the probative value of the properly admitted evidence against Temple was considerable. J.P. testified that Temple had sexually abused her. The confrontation call between J.P. and Temple is highly probative of Temple's guilt as he made numerous statements that corroborated J.P.'s testimony and admitted culpability for his conduct. In addition, two witnesses, Barth and Hutchinson, testified that Temple disclosed to them he had inappropriate sexual contact with J.P. In short, we find it appropriate to characterize the amount of evidence of Temple's guilt as "overwhelming."

In contrast, the probative force of the information sought by the subpoena was slight at best. Temple was permitted to raise this argument at trial, asserting that Jennifer's substantial

interest in the divorce explained the timing and motivation of J.P.'s allegations, through other means. For instance, Temple presented evidence that he filed for divorce from Jennifer in March 2018, and J.P. did not come forward with allegations of sexual abuse until May 2018. Temple also admitted a Facebook post from J.P., made shortly after his arrest, in which she stated "Don't beef with MY MOMMA cause then here come me [sic] and she can't control me . . . . Someone is currently learning this the hard way." Further, both Temple and Jennifer testified that the divorce concerned up to $4 million in assets and that there were contentious custody proceedings. Jennifer's attorney's billing records would add little to this evidence. The jury considered this evidence and still found Temple guilty based on the evidence presented by the State. Thus, we are convinced beyond a reasonable doubt that the verdict would have been the same even if the jury had been able to consider evidence from Jennifer's attorney's billing records. Accordingly, we hold that the State has carried its burden to establish that any error in this case was harmless beyond a reasonable doubt.

**B. The district court did not err in declining to instruct the jury on the statutory duty to report child abuse.**

Temple next argues that the district court erred in refusing to deliver his proposed jury instruction on the statutory duty to report child abuse because the instruction was (1) a proper statement of law, (2) supported by a reasonable view of the evidence, (3) not adequately addressed by the other instructions, (4) not an impermissible comment on the evidence, and (5) pertinent to the case. The State argues the district court did not err in refusing to deliver the instruction because the instruction was (1) misleading, (2) the content of the instruction was adequately covered by the other instructions, and (3) Temple was able to present his argument on mandatory reporting during closing. The district court declined to deliver the instruction, reasoning that the instruction was not "pertinent to th[e] case, given that it's not the doctors [sic] that are being charged in this matter."

When instructing a jury, a trial court "must state to them all matters of law necessary for their information." I.C. § 19-2132. "In other words, a trial court must deliver instructions on the rules of law that are 'material to the determination of the defendant's guilt or innocence.'" *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009) (quoting *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct. App. 1999)). "This necessarily includes instructions on the 'nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted.'" *State v. Ahmed*, 169 Idaho 151, __, 492 P.3d 1110, 1125 (2021) (quoting

8

*State v. Meyer*, 161 Idaho 631, 634, 389 P.3d 176, 179 (2017)). It is reversible error to deliver instructions that mislead the jury or prejudice a party. *State v. Mann*, 162 Idaho 36, 40, 394 P.3d 79, 83 (2017) (citing *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000)).

Either party may request the delivery of an instruction. I.C. § 19-2132. However, only those instructions that the court determines are "correct and pertinent" must be delivered. *Id.* A trial court need not deliver an instruction if "it is either [(1)] erroneous in its statement of law, [(2)] . . . not supported by the evidence, [(3)] constitutes an impermissible comment on the evidence, or [(4)] is adequately covered by the other instructions given by the court." *State v. Lemmons*, 158 Idaho 971, 976, 354 P.3d 1186, 1191 (2015) (quoting *State v. Tiffany*, 139 Idaho 909, 916, 88 P.3d 728, 735 (2004)).

We hold that the district court did not err in refusing to deliver Temple's proposed instruction because that instruction could have misled the jury, was adequately covered by other instructions, and likely constituted an impermissible commentary on the evidence. First, Temple's proposed instruction would likely mislead the jury because instructing the jury on a witnesses' potential criminal liability confuses the issues the jury is tasked with deciding. As the district court stated, "it's not the doctors [sic] that are being charged in this matter," thus the witnesses' potential criminal liability under section 16-1605 for allegedly failing to report Temple's disclosure would be confusing to the jury. As noted above, instructions are to be "material to the defendant's guilt or innocence." *Severson*, 147 Idaho at 710, 215 P.3d at 430. The instruction sought by Temple had nothing to do with his guilt or innocence.

Second, we conclude the purpose of the proposed instruction—to attack the credibility of the State's witnesses—was adequately covered by other instructions because the district court instructed the jury on their duty to consider the evidence and on their ability to assess each witnesses' credibility. Specifically, the district court instructed the jurors to "determine for yourselves whom you believe, what you believe, and how much weight you attach to what you are told." The instruction continued, stating "[y]our role is to think about the testimony of each witness you heard and decide how much you believe of what the witness had to say." In addition, the jury was instructed specifically about statements Temple may have made to Barth, Jennifer, and Hutchinson and instructed that they were to "decide what, if any, statements were made and give them the weight you believe is appropriate, just as you would any other evidence or statement in

9

the case." Importantly, the defense was ultimately allowed to discuss the reporting requirements without opposition from the State. Thus, the jury was afforded the opportunity to weigh credibility in light of the reporting requirements and still found the defendant guilty. Accordingly, Temple's proposed instruction on mandatory reporting—which was offered to help the jury assess Barth's, Jennifer's, and Hutchinson's credibility—was adequately covered by the other instructions because the instructions given specifically and generally discussed the jury's ability to assess witness credibility in light of the evidence produced at trial.

Finally, the proposed instruction was an impermissible comment on the evidence because it was proposed for the purpose of impeaching specific witnesses' credibility. Temple argues that the proposed instruction on mandatory reporting was pertinent to the case because it would impeach Barth's, Jennifer's, Hutchinson's, and J.P.'s testimony. Thus, by its very nature, Temple's proposed instruction was meant to be a commentary on the evidence because impeaching a witness's credibility is a method of persuading the jury to assign less weight to a particular piece of evidence. *See Impeachment Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Evidence used to undermine a witness's credibility"); *Credibility*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The quality that makes something (as a witness or some evidence) worthy of belief."). Again, Temple put evidence into the record on the statutory duty to report child abuse by cross-examining both Barth and Hutchinson on the subject. Therefore, the district court did not err by electing not to instruct the jury on a collateral point of law that was uncontested and not determinative of the case.

Because we hold that the district court did not err in declining to deliver the proposed instruction, we do not address the State's argument that an instruction need not be delivered if "its substance could be adequately covered in closing argument."

## V. CONCLUSION

For the foregoing reasons, we affirm Temple's judgment of conviction.

Chief Justice BEVAN and Justices BRODY, STEGNER, and MOELLER **CONCUR**.

10