IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 49964

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | Filed: November 1, 2024 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| ERIC LOREN BENZO, | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

Judgment of conviction and unified life sentence, with a minimum period of confinement of twenty-five years, for first degree murder, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

TRIBE, Judge

Eric Loren Benzo appeals from his judgment of conviction after a jury found him guilty of first degree murder, Idaho Code § 18-4003(d). Benzo argues the district court erred in admitting photos of certain text messages at trial and in allowing the girlfriend of the deceased to make a victim impact statement at sentencing. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Donald Bush was shot and killed outside the home of his girlfriend, Rebecca Ahlers. At trial, Ahlers testified that on the day Bush was killed, Benzo arrived at her home driving a truck, wearing a mask, and possessing a firearm. Ahlers approached Benzo and asked him to remove the mask and to hand her the gun. Benzo told her to send Bush out. By then, Bush was exiting the home, and Benzo left the truck and approached Bush. Benzo told Ahlers, who was between the

1

two men, "to get the F out of the way or he was going to shoot" her, too. At that point, Benzo shot Bush in the back. Ahlers testified that, "it spun [Bush] around and he slammed into the side of [her] pickup and hit the ground," where he was lying face down and "motionless." Benzo shot Bush again while he was on the ground. Bush died from the gunshot wounds.

Benzo was charged with first degree murder and the case proceeded to trial. After selecting a jury, but before opening statements, Benzo objected to the potential admission of photos depicting text messages purported to have been sent by him to Ahlers, asserting a lack of proper authentication. At the time of the objection, the district court concluded that the photos of the text messages may be relevant, allowed the State to mention them in its opening statement, and reserved ruling on their admissibility.

During trial, Ahlers testified that she met Bush a couple months prior to his death. Ahlers also testified that she had known Benzo for about five years and that they had previously been involved in a romantic relationship. About a month prior to murdering Bush, Benzo went to Ahlers' home and stated that he wanted to be friends with her and that he did not want the two to harbor animosity toward each other. It was at this time that Ahlers told Benzo that Bush was in her life. According to Ahlers' testimony, Benzo acted like this new relationship was not a problem. However, Ahlers believed that Benzo did have a problem with the relationship because of text messages she received; messages that she testified were from Benzo. All but one of the offered photos depicting the text messages were admitted at trial based on Ahlers' testimony. The jury found Benzo guilty. At sentencing, over Benzo's objection, Ahlers was allowed to make a victim impact statement. The district court sentenced Benzo to a unified term of life, with twenty-five years determinate. Benzo appeals.

## II.

## ANALYSIS

### A. Admission of Text Messages

Benzo argues that the district court abused its discretion by overruling his objection to the admission of State's exhibits 30B through 30H, 30J, and 30K--photos of text messages that Ahlers received before Bush was killed. Specifically, Benzo claims that "none of the numbers were linked" to him and that the State relied only upon Ahlers' testimony that, "she believed the texts came" from Benzo "based on the language used." Benzo asserts that when reviewed in their

2

entirety, the text messages were not properly authenticated. Benzo's objection included that exhibits 30B through 30H, 30J, and 30K came from multiple numbers and contacts. Benzo contends that these numbers were never shown to match his phone number and that the State failed to present information about who the numbers belonged to or how Benzo may have had access to those numbers. In addition, Benzo argues that the photos of the text messages were not properly authenticated because the messages reflected different writing styles--some with punctuation, some without; some written in letter format, others not; and one using emojis, the others not. Also, Benzo notes many of the photos of the text messages were not dated. The State argues the text messages were properly admitted because Ahlers' testimony provided sufficient foundation for their admission. We agree with the State.

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

The requirement of authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Idaho Rule of Evidence 901(a). Rule 901(b) contains an illustrative, but not exhaustive, list of suggested methods of authentication. *State v. Koch*, 157 Idaho 89, 96, 334 P.3d 280, 287 (2014). The Idaho Supreme Court has held that establishing the identity of the author of a text message or email by use of corroborating evidence is critical to satisfying the authentication requirement for admissibility. *Id.* at 97, 334 P.3d at 288. Thus, the proponent of the evidence must explain the purpose for which the text message is being offered and provide sufficient direct or circumstantial corroborating evidence of authorship to authenticate the text message as a condition precedent to its admission.

3

*Id.* Authenticating a text message may be done in much the same way as authenticating a telephone call under I.R.E. 901(b)(6). *Koch*, 157 Idaho at 97-98, 334 P.3d at 288-89.

Ahlers testified that the text messages contained things that only Benzo would say and that they were written in Benzo's unique style of writing. In addition, the text messages used distinctive language, were consistent with one another, were consistent with text messages that Benzo sent on Facebook to others, and even alluded to the author as "Eric." This was sufficient circumstantial corroboration that the text messages were written by Benzo. Benzo points out that the "text messages came from at least three different numbers," and that the State did not link the numbers to Benzo. He argues that, without direct evidence linking all three numbers to him, there is insufficient foundation to show he was using these three numbers to send the text messages to Ahlers. However, Ahlers testified that Benzo would routinely send her "messages from random different numbers." While Ahlers said she was not certain that was "Eric's number," she still knew that it was "a number that he would use." This is consistent with Detective Swanstrom's testimony, who testified for the State, and explained that there are "multiple different applications out there" that can be used for "spoofing." The detective defined spoofing as an incoming text message that will show up with "another number" that does not belong to the person who sent the text message. A "spoofed" text message would not appear as coming from a "contact in [the recipient's] phone," but instead would appear to come from a random number.

The State provided sufficient evidence to demonstrate that the photos of the text messages were what it and Ahlers purported them to be: text messages from Benzo, close in time to the murder of Bush. This was corroborated by Ahlers' testimony about her relationship with Benzo, his knowledge of her family, and his behavior and actions toward her. The district court did not err in admitting the photos of the text messages as exhibits.

Benzo also argues that the cumulative error doctrine applies to the admission of the photos of the text messages, necessitating a reversal of his conviction. Specifically, Benzo argues that even if the erroneous admission of any one of the text message exhibits was harmless, under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of multiple errors. *Id.* As set forth above, Benzo has failed to demonstrate at least two errors at his trial regarding the

4

admission of the photos of the text messages. As such, the cumulative error doctrine does not apply.

**B.      Victim Impact Statement**

Benzo's next claim of error stems from Ahlers' victim impact statement given at his sentencing hearing. Benzo asserts that the district court erred in determining that Ahlers was a victim and that allowing Ahlers to give a victim impact statement was an abuse of discretion. The State argues that Benzo failed to show error because Ahlers was properly identified as a victim and was permitted to present a victim impact statement pursuant to the plain language of I.C. § 19-5306. Furthermore, the State contends that, to the extent current Idaho case law says otherwise, it is manifestly incorrect and should be overruled. Alternatively, the State argues that, even if Ahlers was not a "victim" under the statutory definition, it was still proper for the district court to allow her to make a statement at the sentencing hearing. Finally, the State argues, even assuming the district court erred in allowing Ahlers to make a statement, any error was harmless.

Interpretation of I.C. § 19-5306 is a question of law over which we exercise free review. *State v. Lampien*, 148 Idaho 367, 373-74, 223 P.3d 750, 756-57 (2009). Whether a person is a victim under that statute is a factual determination that is reviewed for an abuse of discretion. *Id.* at 373, 223 P.3d at 756.

The Idaho Constitution directs the legislature to define "crime victim." IDAHO CONST. art. 1, § 17. As such, I.C. § 19-5306(5)(a) defines a victim as "an individual who suffers direct or threatened physical, financial or emotional harm as the result of the commission of a crime or juvenile offense." In homicide cases, victim includes the deceased's immediate family. I.C. § 19-5306(3); *State v. Payne,* 146 Idaho 548, 575, 199 P.3d 123, 150 (2008).

In *Payne,* a capital homicide case, the Idaho Supreme Court interpreted the statutory definition of "victim." At the defendant's sentencing, the deceased's nonimmediate family and friends provided victim impact evidence. *Payne*, 146 Idaho at 573-74, 199 P.3d at 148-49. Payne challenged the admissibility of this evidence under I.C. § 19-5306, arguing his counsel was deficient for failing to "limit the statements to those of immediate family members." *Payne,* 146 Idaho at 575, 199 P.3d at 150. To resolve the issue, the Court turned to the language of the statute, and reasoned:

5

In this instance, we hold that I.C. § 19-5306 limits victim impact statements to immediate family members. First, reading the entire statute makes it clear that the legislature intended to limit the definition of "victim" by providing that a victim must have suffered direct harm as a result of the commission of the crime. I.C. § 19-5306(5)(a). Additionally, in cases of homicide, it extends the right to make a statement only to immediate family members. I.C. § 19-5306(3). When read together, the meaning is clear: the legislature intended to limit the right to be heard to only immediate family members.

However, the legislature did not define "immediate family members" in this section. Nonetheless, it has elsewhere provided definitions. For instance, in I.C. § 41-1325, "'immediate family member' means a parent, mother-in-law, father-in-law, husband, wife, sister, brother, brother-in-law, sister-in-law, son-in-law, daughter-in-law, or a son or daughter." I.C. § 41-1325(2). Likewise, in I.C. § 44-1601, "'[i]mmediate family member' means the spouse, children, brother, sister, mother or father."

*Id.* Based on this reasoning, the Court held that the victim impact evidence from the deceased's nonimmediate family and friends was inadmissible. *Id.* at 575-76, 199 P.3d at 150-51. Whether individuals who do not meet the definition of victim may offer otherwise relevant evidence at sentencing falls within the discretion of the sentencing court, guided by relevance, reliability, and the potential for undue prejudice. *State v. Hansen*, 156 Idaho 169, 174, 321 P.3d 719, 724 (2014).

At Benzo's sentencing, the district court allowed Ahlers to make a victim impact statement and explained multiple times that Ahler qualified as a victim. The district court based that decision, in part, on Ahlers' trial testimony because it was her "testimony that the jury believed and the verdict in this case would suggest that she was involved in a relationship, that she was--she and the victim were together. She witnessed the entire incident. Incredibly traumatic incident. So I'm going to allow her to make a statement."

However, this explanation does not satisfy the *Payne* analysis of the term "victim" for purposes of providing a victim impact statement. The rights in I.C. § 19-5306 are guaranteed only to Bush's immediate family because Bush was the victim of the murder and, under the *Payne* analysis, only his immediate family members would have been permitted to provide victim impact statements during sentencing. There is nothing to suggest that Ahlers and Bush were immediate family members or married, and the district court did not consider whether the necessary relationship existed in its decision to allow Ahlers to provide her statement.

Under *Payne*, someone can also be classified as a victim if he or she suffered direct harm from a crime. While Ahlers could have been the victim of assault or another crime, those crimes

6

were not charged; therefore, she cannot be considered a victim for purposes of presenting a statement during Benzo's sentencing hearing. Because Ahlers does not qualify as a victim under I.C. § 19-5306, she was not entitled to present a victim impact statement as a matter of right under that statute.

The fact that Ahlers is not a "victim" as defined by statute does not, however, preclude her from presenting relevant information at sentencing. It is not a matter of right but a matter of discretion with the sentencing court determining the relevance, reliability, and the potential for undue prejudice. The district court has broad discretion in determining what evidence is to be admitted at a sentencing hearing. *State v. Johnson,* 101 Idaho 581, 583, 618 P.2d 759, 761 (1980). There are no limitations placed on the information presented to the court regarding the background, character, and conduct of the defendant being sentenced. *State v. Flowers*, 150 Idaho 568, 574, 249 P.3d 367, 373 (2011). It would have been proper to allow Ahlers to make a statement as a direct witness to the crime. As a direct witness, Ahlers could have testified at the sentencing hearing about the nature and circumstances of the crime and the history, character and condition of the defendant. I.C. § 19-2521(1); *Hansen*, 156 Idaho at 175, 321 P.3d at 725. While a small portion of Ahlers' testimony can be said to relate to the background and circumstances of the crime and character of Benzo, her testimony primarily focused on the impact of the crime on her and her family, including her children. Because the district court declared Ahlers was a victim without regard to the statutory definition of victim and allowed Ahlers to testify beyond the scope of what would be permissible for a nonstatutory victim, the district court did not correctly perceive the issue as one of discretion and did not act within the boundaries of such discretion.

## C.    Ahlers' Statement

The State argues that the error was harmless. Idaho Criminal Rule 52 provides that "any error, defect, irregularity or variance that does not affect substantial rights shall be disregarded." The Idaho Supreme Court has said that this I.C.R. 52 standard is equivalent to the ordinary harmless error analysis: if a substantial right is not affected, an abuse of discretion may be deemed harmless. *State v. Parker,* 157 Idaho 132, 140, 334 P.3d 806, 814 (2014); *State v. Morin*, 158 Idaho 622, 627, 349 P.3d 1213, 1218 (Ct. App. 2015). In the context of victim impact statements, *Payne* makes clear that a court's inquiry does not end with the determination that inadmissible victim impact statement evidence was presented at sentencing. Rather, improper admission of

7

victim impact statements is reviewed for harmless error. *Payne,* 146 Idaho at 574, 199 P.3d at 149. To hold an error harmless, the court must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility such evidence complained of contributed to the conviction. *Id.* The *Payne* Court applied the "no reasonable possibility" test regarding a conviction to the sentence imposed. *Id.* Because the district court erred in allowing Ahlers to provide victim impact testimony, rather than limiting her testimony to information regarding the background and circumstances of the crime and character of the accused, the State has the burden of demonstrating that the error is harmless beyond a reasonable doubt. *State v. Temple*, 170 Idaho 148, 154, 508 P.3d 1222, 1228 (2022). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020).

Turning to the probative force or prejudicial effect of the error, Benzo argues that Ahlers' victim impact testimony was extensive, included multiple impacted persons and was emotionally charged. Ahlers testified that the murder was traumatizing to witness because Benzo pointed his gun's laser at her chest, she feared for her life, and her children were sleeping in the house near the murder. Since the murder, Ahlers testified that "nothing has been the same" in her life. The crime impacted her and her family to the point they were evicted from where they lived because "nobody wanted to be around that sort of chaos." Ahlers also testified that her nine-year-old daughter missed an entire year of school because they were living in fear and that the event has cost her friendships that can't be repaired. The district court mentioned the impact on Ahlers and her children during sentencing:

> And I want to say that I have huge compassion for Ms. Ahlers' children because we have to remember that it was early morning, and they have got two little kids in that small home, and we have a murder taking place outside, and a person is violently killed. And then their mother is obviously hysterical. And then we have law enforcement.
> And I'm sure that those children are traumatized, and they are going to need a lot of help, and Ms. Ahlers, as well.
> And I hope you get--you are able to get counseling and things that are going to help you, because Ms. Ahlers is certainly a victim, as well as Mr. Bush.

The probative force of the improperly admitted testimony was notable.

On the other hand, the probative force of the record as a whole, excluding the erroneously admitted impact testimony, supporting Benzo's sentence is substantial. Much of the impact on Ahlers and her family was obvious to the district court from the trial evidence. Admitted Facebook messages showed Benzo was obsessed with Ahlers and Bush and that he was "pissed" and "coming for blood." The murder happened in front of her with her children close by. At sentencing, the trial court addressed the goals of sentencing and reviewed the relevant sentencing factors as outlined in I.C § 19-2521. The district court also reviewed mitigating and aggravating factors it believed were present. In mitigation, the district court found that Benzo had the support of his mother and a significant other and had periods of employment that included firefighting. The district court found the crime was unprovoked and premeditated and that Benzo was seriously involved in methamphetamine. Thus, the evidence presented at trial and the materials reviewed by the district court warranting the sentence Benzo received were strong and compelling.

The probative force of the evidence supporting Benzo's sentence weighs heavily against the force of the district court's error in allowing improper victim impact testimony. Accordingly, this Court concludes that the State has met its burden of establishing beyond a reasonable doubt that the error did not contribute to the sentence imposed by the district court and is harmless.

### III.

### CONCLUSION

Benzo failed to show that the district court erred in admitting photos of certain text messages. Although the district court erred in characterizing Ahlers as a victim and allowing her to present a statement at sentencing as such, we conclude this error was harmless. Accordingly, Benzo's judgment of conviction and sentence for first degree murder are affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.